**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| YAODI HU, | ) | |
|       Plaintiff, | ) | No. 08 C 2007 |
|    vs. | ) | |
| | ) | The Honorable |
| HONORABLE TIMOTHY EVANS, Chief Judge | ) | Judge Amy St. Eve |
| of Circuit Court of Cook County, Illinois, | ) | |
| HONORABLE PAMELA HILL VEAL, Judge, | ) | Magistrate Judge Ashman |
| HONORABLE SHERYL PETHERS, Judge, All in | ) | |
| Their Official Capacity, | ) | |
| | ) | |
| WALINSKI & TRUNKETT, P.C., BRIAN | ) | |
| LEWIS, JOHN BUSCHER, ROBERT | ) | |
| WALINSKI, PARK NATIONAL BANK, ALLEN | ) | |
| MEYER, | ) | |
| | ) | |
|       Defendants. | ) | |

**DEFENDANT PARK NATIONAL BANK'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS**

Defendant, Park National Bank, through its attorneys, Wildman, Harrold, Allen & Dixon

LLP, requests that this Court dismiss the Plaintiff's Amended Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6). [1]  In support of this Memorandum, Defendant Park National

Bank states as follows:

**PROCEDURAL BACKGROUND**

On April 9, 2008, Plaintiff Yaodi Hu ("Plaintiff") filed a six-count complaint in the

Northern District of Illinois against several defendants, including Defendant Park National Bank

("Park") stemming from alleged actions that Plaintiff alleges took place during court proceedings

---

[1] In submitting this Motion to Dismiss, Defendant Park National Bank recognizes that Plaintiff Hu has failed to
properly serve Park National Bank.  Nevertheless, Defendant Park National Bank submits its Motion to Dismiss in
an effort to avoid any unnecessary confusion, duplication or delay.

previously held in the Circuit Court of Cook County.  With respect to Defendant Park and the attorneys representing Park in the Circuit Court of Cook County action (collectively, the "Park Defendants"), Plaintiff's district court complaint alleged that actions that took place during the state court action constituted violations of various constitutional rights held by Plaintiff.

On April 18, 2008, prior to any defendant filing an appearance, this Court *sua sponte* issued an Order dismissing Plaintiff's Complaint.  As to the Park Defendants, this Court made the following findings: 1) that these Defendants were not state actors as required for a Section 1983 claim; 2) to the extent Plaintiff's Complaint allegations challenged the state court judgment, the *Rooker-Feldman* Doctrine barred such claims, and 3) that Plaintiff had not made any allegations of a contractual relationship with any of the Defendants in order to sufficiently allege a Section 1981 claim.  Based on these and other findings (not related to the aforementioned Defendants), this Court *sua sponte* dismissed Plaintiff's Complaint in its entirety.

Thereafter, Plaintiff sought leave to file an Amended Complaint, which was granted on May 20, 2008.  On June 27, 2008, Plaintiff filed his First Amended Complaint, which is the subject of this Motion to Dismiss.

Importantly, it should be pointed out to this Court that on July 18, 2008, the Honorable Virginia Kendall referred the Plaintiff to the Executive Committee of the United States District Court for the Northern District of Illinois for what she refers to as a "pattern of violation of Court orders and abusive filings."  Judge Kendall noted that Plaintiff has filed twelve federal court cases since October 25, 2006, with five of the cases being filed since February 2008.  A copy of Judge Kendall's Minute Order and Memorandum and Opinion Order dated July 18, 2008 is attached hereto as Exhibits A and B.   This is Plaintiff's second federal court filing against Park

since February 2007 relating to the same underline occurrence—his deposit of counterfeit money orders into his Park National Bank checking account.

## FACTS

Park is a banking institution, in which, at one point, Plaintiff held a deposit account. Park, through its attorneys, brought suit in the Circuit Court of Cook County against Plaintiff based on the alleged deposit of five thousand dollars worth of counterfeit Postal Money Orders into his Park bank account. On March 12, 2008, the state court action went to trial before Judge Pamela Veal Hill. Thereafter, Judge Pamela Veal Hill rendered a judgment in favor of Park.

## SUMMARY OF THE ARGUMENT

Plaintiff's Amended Complaint allegations are virtually identical to his original Complaint. Although Plaintiff has added some case law citations, vague allusions to a conspiracy, and changed the title of two of his causes of actions against Park, little has changed in terms of actual allegations. The end result is that the factual and legal landscape of Plaintiff's claims has not and cannot change.

Plaintiff's constitutional claims against Park must fail because Plaintiff's Amended Complaint is completely devoid of any of the factual allegations necessary to find the existence of state action. Instead, Plaintiff's allegations amount to nothing more than impermissible unsupported legal conclusions.

Plaintiff fails to state a claim under the Fair Debt Collections Practices Act (the "FDCPA" or the "Act"), because the FDCPA does not apply to Park or to the situation presented in Plaintiff's Amended Complaint.

Moreover, because Plaintiff's FDCPA claim arises from the collection of the bank debt, it is barred under the doctrine of *res judicata.*

Finally, despite Plaintiff's assertions to the contrary, it is clear that he is challenging the state court judgment, which is barred by the *Rooker-Feldman* Doctrine as found already by this Court in the April 18, 2008 Order.

Because Plaintiff has not and cannot state any claims against Park, Plaintiff's Amended Complaint must be dismissed with prejudice.

## LEGAL STANDARD

In order to withstand a 12(b)(6) motion to dismiss, a plaintiff's complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief, but also sufficiently provide the defendant with "fair notice" of the claim and its basis. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, No. 07-1567, 2008 WL 2941171, *2 (7th Cir. August 1, 2008) (attached hereto as Exhibit C). While a complaint attacked by a 12(b)(6) motion need not contain detailed factual allegations, a plaintiff's obligation to provide the grounds of his "entitlement to relief" requires more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1965 (2007). Thus, formulaic recitation of the elements of a cause of action will not suffice. *Id.* at 1965. Instead, in order to demonstrate that the plaintiff is entitled to relief, the plaintiff must show through his allegations that it is "plausible, rather than merely speculative, that he is entitled to relief." *Windy City Metal*, 2008 WL 2941171 at *2. Put differently, the factual allegations in the complaint must "actually suggest that plaintiff has a right to relief by providing allegations that raise a right to relief above the speculation level." *Id.*

Plaintiff's Amended Complaint must be dismissed with prejudice because Plaintiff's allegations amount to nothing more than impermissible labels, conclusions and speculations that fail to show that he is entitled to any relief.

## ARGUMENT

### I.  THE FDCPA DOES NOT APPLY TO PARK OR TO THE SITUATION AS DESCRIBED IN PLAINTIFF'S AMENDED COMPLAINT

Count III of Plaintiff's Amended Complaint alleges that Park violated sections 1692d, 1692e and 1692f of the FDCPA in their attempted collection of the bank debt against Hu. Plaintiff's FDCPA claim must fail because Plaintiff has not alleged facts placing Park or the situation described in Plaintiff's Amended Complaint within the scope of the definitions of the FDCPA.

#### A.      Park Is Not A Debt Collector As Defined By The FDCPA.

The Act defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Donley v. Nordic Properties, Inc.*, No. 99 C 4677, 2003 WL 22282523,  *2 (N.D. Ill. Sept. 30, 2003) (attached hereto as Exhibit D).   Importantly, the definition <u>does not</u> include a person collecting its own debts or the debts of any entity which is related by common ownership or affiliated by corporate control.  *Id.* (court finding that the defendant corporation who hired law firm to file suit against plaintiff in relation to a debt of past due rent owed to it was **not** a "debt collector" as the term is defined in the Act because defendant corporation was attempting to collect its own debt).

In our case, Plaintiff alleges that the state court lawsuit was an attempt by Park to collect about $3,500 from Plaintiff relating to five thousand dollars worth of alleged counterfeit postal money orders deposited by Plaintiff into his Park bank account.  (Pl's. Am. Complt. ¶¶ 63, 64, 71 and 89).  Since it is clear from Plaintiff's Amended Complaint that Park was attempting to collect

its own debt, then Park is not a debt collector as defined by the Act.  Plaintiff's FDCPA claim

against Park must fail for this reason alone.

      **B.**      **Plaintiff Fails To Allege Facts Placing The Debt Within Scope Of The Act.**

      According to the FDCPA, the term "debt" means "any obligation or alleged obligation of

a consumer to pay money arising out of a transaction in which the money, property, insurance, or

services which are the subject of the transaction are primarily for personal, family or household

purposes, whether or not such obligation has been reduced to judgment."  *Arnold v. Truemper*,

833 F. Supp. 678, 685 (N.D. Ill. 1993) (court finding that plaintiff failed to adequately state a

claim under the FDCPA where, *inter alia*, the plaintiff failed to allege whether the debt arose out

of a transaction related to consumer purposes as required by the Act).

      Here, similar to *Arnold*, Plaintiff does not allege that the debt arose out of a transaction

primarily for consumer purposes.  Rather, Plaintiff merely alleges that Park and its attorneys

were attempting to collect $3,500 from Plaintiff, presumably in regards to the alleged counterfeit

Postal Money Orders that were deposited into his Park bank account.  However, from Plaintiff's

allegations, it is completely unclear whether this is the type of debt the Act seeks to cover.

Because Plaintiff fails to allege proper facts regarding whether the debt is, in fact, covered by the

FDCPA, Plaintiff's FDCPA claim fails for this additional reason.

      Because Plaintiff has failed to allege facts placing Park or the debt within the scope of the

FDCPA, Plaintiff cannot state a claim and his Amended Complaint must be dismissed with

prejudice.

## II.    PLAINTIFF'S FDCPA CLAIM ARISES FROM THE COLLECTION OF THE BANK DEBT AND THEREFORE IS BARRED UNDER THE DOCTRINE OF *RES JUDICATA*.

Even if this Court were to find that the FDCPA applies to Park and the situation at issue in Plaintiff's Amended Complaint, Plaintiff's claim under the FDCPA arises from the debt at issue in the state court proceeding and therefore, is barred under the doctrine of *res judicata*.

For *res judicata* to apply, the following three elements must be present: 1) a final judgment on the merits in an earlier action; 2) an identity of the cause of action in both the earlier and later suit; and 3) an identity of parties or privies in the two suits. *Sanders v. Venture Stores, Inc.*, 899 F. Supp. 387, 388 (N.D. Ill. 1995). The Northern District has determined that an identity of causes of action in the earlier and later suits is satisfied when "a single core of operative facts form the basis of both lawsuits." *Id.* Explaining further, the Northern District has specifically held, **"[a]ll claims** arising out of an event that causes injury must be brought in one suit **or be lost**." *Id.* (emphasis added).

In our case, all three elements are satisfied. Plaintiff's Amended Complaint alleges that on March 12, 2008, the state court action at issue in the claims against the Park Defendants went to trial before Judge Pamela Veal Hill. (Pl.'s Am. Complt. ¶ 68). Thereafter, Judge Pamela Veal Hill rendered a judgment in favor of Park. (Pl.'s Am. Complt. ¶ 71). It is further clear from Plaintiff's allegations that Plaintiff and the Park Defendants were parties in the prior suit, and obviously are parties in the present suit. Finally, Plaintiff's allegations make it clear that his FDCPA claim arises from the debt that was at issue in the state court proceeding. Plaintiff alleges that the Park Defendants engaged in certain conduct in relation to the collection of the debt. Regardless of the veracity of these allegations, the attempted collection of the debt is the operative fact underlying both suits. Plaintiff asserts that the alleged conduct relating to the collection of the debt was present virtually at the beginning of the case—at the very least, before

discovery began.  (Pl.'s Am. Complt. ¶¶ 62 & 63).  Plaintiff could very well have brought a countersuit against the Park Defendants in the state court action for violation of the FDCPA— and indeed had an obligation to do so.  As previously stated, the Northern District has made it clear that "all claims arising out of an event that causes injury must be brought in one suit or be lost." *Sanders v. Venture Stores, Inc.*, 899 F. Supp. 387, 388 (N.D. Ill. 1995).  Because Plaintiff chose not to bring all his claims that arose from the one event in one suit—the claim is lost under the doctrine of *res judicata*.  Plaintiff's FDCPA claim must be dismissed with prejudice.

## III.   PLAINTIFF'S CONSTITUTIONAL CLAIMS FAIL BECAUSE THE PARK DEFENDANTS ARE NOT STATE ACTORS

This Court has previously found that the Park Defendants are not state actors and that Plaintiff, in his original complaint, had not alleged any state involvement on the part of the Park Defendants in order to trigger any constitutional protections.  (Memorandum Opinion and Order dated April 18, 2008).   On that basis, the constitutional claims against the Park Defendants were dismissed.  Significantly, with the exception of a few conclusory allegations of a conspiracy in an effort to squeeze the Park Defendants within the ambit of the 14th Amendment, Plaintiff has not made any major adjustments to his Amended Complaint.  Plaintiff's Amended Complaint is plagued with the same deficiencies as his original complaint and must be dismissed.

### A.    Plaintiff's Section 1983 Claim Fails To Sufficiently Allege A Conspiracy

In order to violate Section 1983, the defendant must be a state actor.  *Mnyofu v. Board of Education of School District 227*, No. 03 C 8717, 2004 WL 783507, *3 (N.D. Ill. Jan. 12, 2004) (attached hereto as Exhibit E).  A Section 1983 claim may be maintained against private actors, but only if the plaintiff can show a conspiracy between them and persons who are state actors. *Id*.  In order to state a valid claim for a Section 1983 claim, a plaintiff must show that: 1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his

constitutional rights; and 2) those individual(s) were willful participants in joint activity with the State or its agents.  *Id.*  Factual allegations regarding the existence of the conspiracy are necessary, and unsupported legal conclusions must be ignored.  *Id.*

Here, although Plaintiff does make allegations of a conspiracy, these allegations amount to nothing more than legal conclusions.  In Paragraph 70, Plaintiff alleges that the collection attorneys together with the judge effectively prevented Hu from presenting his testimony.  In Paragraph 92, Plaintiff states that the collection attorneys and the Judge conspired to deprive him of his constitutional rights.  In Paragraph 97, Plaintiff alleges that "[c]orruption by those collection attorneys and the Judge Veal so far succeeded in corrupting the state judicial process as to obtain a favorable judgment."  And in, Paragraph 98, Plaintiff alleges that "[Plaintiff's] procedural due process right under the [14th] Amendment was blatantly deprived by those defendants."

These allegations shed no insight into whether an agreement existed, the terms of the agreement, nor whether the private actors were willful participants.  Instead, these are merely unsupported factual and legal conclusions, which the Court is required to ignore.  Because Plaintiff has not and cannot meet his burden of pleading a Section 1983 conspiracy, this claim must be dismissed with prejudice. [2]

**B**.    **Plaintiff's 14th Amendment Equal Protection Claim Fails To Sufficiently Allege State Action**

To bring a claim under the Equal Protection Clause, the plaintiff must "present evidence of state action rather than purely private action."  *Radivojevic v. The Granville Terrace Mutual*

---

[2] It appears that Plaintiff's Section 1983 claim is only against the collection attorneys and not against Park. However, to the extent a Section 1983 claim against Park can be construed from the Amended Complaint, Park joins in and fully adopts the arguments under Section IIIA of this Motion To Dismiss that Plaintiff fails to state a valid 1983 claim against it because it failed to sufficiently allege a conspiracy.

*Ownership Trust*, No. 00 C 3090, 2001 WL 123796, *1 (N.D. Ill. Jan. 31, 2001) (attached hereto as Exhibit F); see also, *Steven v. Illinois Department of Transportation*, 210 F.3d 732, 739 (7th Cir. 2000).  Although Equal Protection claims may be brought against private parties, this is **only** so where the action "derives from the exercise of a right or privilege having its source in state authority **and** where the private party engaging in the action can be described in all fairness as a state actor." *Radivojevic*, 2001 WL 123796 at *1 (emphasis added).  In making this determination, the court considers, "the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." *Id*.

Plaintiff's Amended Complaint is completely and wholly devoid of any allegations demonstrating the existence of state action as it applies to the Park Defendants.   Plaintiff alleges that the collection attorneys intentionally misrepresented facts to the court and aggressively pursued the debt because Plaintiff is Asian.  (Pl.'s Am. Complt. ¶¶ 104 & 105).  Notwithstanding the veracity of these statements, the allegations fail to show that this alleged conduct derived from the "exercise of a right or privilege having its source in state authority" or that the Park Defendants can be "described in all fairness as state actors" as required for a Equal Protection claim against private actors.  Without more, these allegations amount to nothing more than private conduct by private actors.  Because Plaintiff has not and cannot show state action on the part of the Park Defendants, Plaintiff's Equal Protection claim must be dismissed with prejudice.

## IV.    THE ROOKER-FELDMAN DOCTRINE BARS PLAINTIFF'S CLAIMS AGAINST THE PARK DEFENDANTS

Plaintiff's FDCPA claim, Section 1983 claim and his Equal Protection claim are nothing more than unsuccessful attempts to navigate his way around this Court's invocation of the

*Rooker-Feldman* Doctrine in its April 18, 2008 Order.  Although Plaintiff asserts that he is not

seeking a review of the state court judgment, Plaintiff's constant challenge of the state court

proceedings and the decisions made in those proceedings suggest otherwise.  As this Court has

previously found, Plaintiff's challenge to the state court judgment is barred by the  *Rooker-*

*Feldman* Doctrine.  The Park Defendants adopt and incorporate herein this Court's April 18,

2008 Order dismissing Plaintiff's claims under the *Rooker-Feldman* Doctrine.

## CONCLUSION

WHEREFORE, for all the reasons stated above, Defendant Park National Bank

respectfully requests that this Court dismiss Plaintiff's Amended Complaint with prejudice.

Dated:  August 25, 2008                                     Respectfully submitted,

**PARK NATIONAL BANK**


By:  /s/ Angela Stinson-Marti_____
One of the attorneys for Park National Bank


Angela Stinson-Marti
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Chicago, Illinois 60606
Phone: 312-201-2637
Fax:  312-416-4864

### CERTIFICATE OF SERVICE

I, Angela Stinson-Marti, an attorney, hereby certify that on August 25, 2008, I had a true copy of the preceding document filed with the Court and served upon counsel of record via the court's electronic filing system.

_____/s/  Angela  Stinson-Marti_____
Angela Stinson-Marti

# Exhibit A

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1
### Eastern Division

Yaodi Hu

                                        Plaintiff,

v.                                                      Case No.: 1:07−cv−03822
                                                        Honorable Virginia M. Kendall

Peter Huey, et al.

                                        Defendant.

_____

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, July 18, 2008:

     MINUTE entry before the Honorable Virginia M. Kendall:Pursuant to Memorandum Opinion and Order entered this day, plaintiff's motion to reconsider [37] and motion for a writ of mandamus [45] are denied. Based on Hus pattern of violation of Court orders and abusive filings as set forth in the factual background in this opinion, this Court refers Yaodi Hu to the Executive Committee to consider whether he should be subjected to filing restrictions in the Northern District of Illinois. Mailed notice(jms, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov.*

**EXHIBIT A**

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| YAODI HU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 3822 |
| | ) | |
| PETER HUEY, ANGELA IP, | ) | Judge Virginia M. Kendall |
| and K.Y. Chau, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND OPINION ORDER

Plaintiff Yaodi Hu ("Hu"), a *pro se* litigant, brought suit against Defendants, Peter Huey ("Huey"), Angela Ip ("Ip"), and K.Y. Chau ("Chau") (collectively the "Defendants") alleging that they conspired to restrain his trade, violate his First Amendment right to free speech and retaliated against him in connection with a commercial lease for property. His allegations stem from the Defendants' eviction action against him and his wife, Jun Zhou ("Zhou") – an action which, at the time of this Court's ruling on Defendants' Motion to Dismiss, was pending in state court.

### Hu's History of Federal Court Filings

Hu is no stranger to the federal judicial system nor to filing complaints alleging discriminatory actions under 42 U.S.C. §§ 1981 and 1983 and the Sherman Antitrust Act. *See* Case Nos. 06 C 6589, 07 C 844, 07 C 3748, 07 C 3822, 07 C 5494, 07 C 7203, 08 C 839, 08 C 1032, 08 C 1033, 08 C 2007, 07 C 3428. Yaodi Hu has filed twelve federal claims since October 25, 2006 including five cases since February of 2008. In Hu's first federal claim, *Bell v. Martinez*, Hu and others filed an action under 42 U.S.C. § 1983 seeking to enjoin the State of Illinois from enforcing

1

**EXHIBIT B**

Article 3 of the Residential Real Property Disclosure Act and the Illinois Predatory Lending

Database Pilot Program because it had a discriminatory effect on residents of ten zip codes. *See* 06

C 5809; Cplt. ¶ 1. Hu's counsel withdrew from representing Hu but continued to represent the other

plaintiffs. On November 29, 2006, Hu, now as a *pro se* litigant, sought to amend the Complaint and

file a 68-page cause of action on behalf of a class of borrowers seeking a loan from a loan broker

or a loan originator licensed under the Illinois Residential Mortgage License Act in the Pilot Area.

Dk. 34. Hu's Complaint, filed against numerous defendants including Governor Rod Blagojevich

and Speaker of the House Michael Madigan, alleged that the defendants violated the RICO and

Sherman Antitrust Acts, in addition to other allegations. The District Court Judge dismissed Hu's

Complaint, Hu moved to reconsider, and appealed the District Court's denial to the Seventh Circuit.

Dk. 189.    In *Hu v. Cantwell*, et. al, Hu, *pro se*, sought compensatory and punitive damages

against First Chicago Realty and two individual defendants for violating the Fair Housing Act, 42

U.S.C. § 1981, 42 U.S.C. § 1982, the Illinois Human Rights Act, the Illinois Consumer Fraud and

Deceptive Business Practices Act, and for breach of contract. In short, Hu alleged that the

defendants discriminated against him as a minority buyer. The case is pending.

Less than four months after filing the *Cantwell* case, Hu filed another action – *Hu v. Park*

*National Bank*, against Park National Bank, Donald R. Nichols, Postmaster of the U.S. Postal

Service, the U.S. Postal Service, J.P. Morgan Chase Bank, and Walinski & Trunkett, P.C. Hu's

Complaint stemmed from the sale of a piano. *See* Dk. 1. When Hu notified defendants that the

piano was purchased using counterfeit money order, the defendants reported the matter to federal

officials which report Hu believes to be a violation of the Right to Financial Privacy Act. In June,

2007, Hu's counsel withdrew, Hu filed a *pro se* appearance, and moved to file a second amended

2

complaint adding seven new defendants and thirteen new claims for violations of his rights under the Fourth and Fifth Amendments, the Equal Protection clause of the Fourteenth Amendment, 42 U.S.C. § 1981 and various federal criminal and bank statutes. *See* Dk. 28, 32, 35. The District Court denied Hu's motion on the basis that allowing Hu at such a late date to add seven defendants and a "myriad of new claims would greatly protract the time and resources consumed by this litigation." Dk. 65, 89. Hu moved to reconsider and the Court denied his motion. Dk. 97. Subsequently, the District Court granted Defendants' Motion for Summary Judgment, Hu moved to reconsider, his motion was again denied, and Hu appealed to the Seventh Circuit. Dk. 97-98, 105, 109.

On July 3, 2007, five months after Hu filed the *Park National Bank* case, Hu, appearing *pro se*, filed two more cases within 6 days of each other-- *Hu v. Village of Midlothian*, 07 C 3748 and the case before this Court, *Hu v. Huey*, 07 C 3822. Both cases concern purported violations 42 U.S.C. § 1981, in addition to other claims. In *Hu v. Midlothian*, Hu alleged that the Village of Midlothian violated his constitutional rights when it repeatedly fined him under municipal code 4-18-9(b)5 for overgrown vegetation and for denying his application to display a sign advertising his insurance business. Hu amended his complaint on three occasions and the case is pending before the District Court. Hu's pending action before this Court against Defendants Huey, Ip, and Chau is described in detail below. Two months after filing the *Village* and *Huey* cases, Hu filed *Hu v. Mann*, 07 C 5494, *pro se*, alleging violations of the Sherman Act, the Real Estate Settlement Procedure Act, and the Illinois Antitrust Act. Hu alleged, in short, that Defendants Elizabeth Mann conspired with First American Title to refuse to deal with Quality Title Insurance and Hu in connection with the closing of a real estate transaction. Hu's Complaint was dismissed on January

3

8, 2008 for failure to comply with Federal Rule of Civil Procedure 4(m). Dk. 8.

One month before the District Court dismissed Hu's claim against Mann, Hu filed his seventh federal court claim–this time against the Village of Maywood. *See Hu v. Village of Maywood*, 07 C 7203. Hu alleged that the Village violated 42 U.S.C. § 1983 when it towed Hu's vehicles from his private property. Dk. 1. The Defendants moved to dismiss and Hu amended his Complaint. Still pending before the District Court is Defendants motion to dismiss the First Amended Complaint.

The year 2008 has proved to be Hu's most litigious year to date. Since February 8, 2008, Hu has filed five causes of action against seventeen defendants. *See* Case Nos. 08 C 839, 08 C 1032, 08 C, 1033, 08 C 2007, 08 C 3825. Hu is suing the City of Chicago under 42 U.S.C. § 1981 and 1983 for towing two of his vehicles alleging that the City targets ethnic Chinese minorities when it issues parking tickets. *See* 08 C 839. Hu filed a motion for preliminary injunction under Federal Rule of Civil Procedure 65 and the District Court denied Hu's Motion. Dk. 16. Hu moved to reconsider and the District Court denied his motion on May 29, 2008. Dk. 27. One day later, Hu filed a second Motion to Reconsider which was denied on June 5, 2008. Dk. 31. Hu's appeal to the Seventh Circuit is pending and subject to dismissal under Circuit Rule 3(b). Dk. 27.

Twelve days after Hu's first 2008 federal case, Hu filed two cases on the same day– *Hu v. Pearl River Piano USA* and *Hu v. American Bar Association*, 08 C 1032 and 08 C 1033, respectively. In *Hu v. Pearl River Piano USA*, he alleged that he contracted with Pearl River to purchase several pianos. Because Hu "did not fit into a typical piano dealer prototype: a white male," Hu believes that the contract that he signed contained discriminatory terms in violation of 42 U.S.C. § 1981 and the Sherman Antitrust Act. Cplt.¶ 17; Dk. 1. Hu's third lawsuit for the month

4

of February and second lawsuit filed on February 20, 2008, *Hu v. American Bar Association*, seeks

redress for purported violations of the Fourteenth Amendment of the U.S. Constitution and the Equal

Protection Clause, based on the ABA's failure to accredit Hu with two years of credit hours obtained

at Kent Law School in 1991. Cplt. Dk. 1.

Hu waited almost two months before he filed his fourth 2008 lawsuit– *Hu v. Timothy Evans,*

*et. al.*, 08 C 2007. This cause of action stemmed from a forcible entry and detainer action filed by

one of the defendants in the case at bar, Peter Huey, against Hu in Illinois State Court. Judge Sheryl

Plethers presided over the action and Hu was forcibly evicted for failure to pay rent.[1]  Hu alleges

that he was deprived of a right to a fair trial because, among other allegations, Judge Plethers and

Huey's counsel conspired against Hu and struck his jury demand on the basis of Hu's race.

According to Hu's Complaint, Judge Plether's reason for striking his jury demand was that Hu

waived it in his lease with Huey. Cplt. ¶ 21. Hu pleaded that Judge Plethers failed to take into

account that Hu may have later orally amended the lease agreement. *Id.* A bench trial was held on

December 13, 2007 but Hu refused to consent to the Court's jurisdiction. *Id.* at ¶ 27. The Judge

advised Hu that he could not participate in the proceeding unless he submitted himself to the Court's

jurisdiction. Hu insisted that he could participate in the trial without submitting to the Court's

jurisdiction until the Court's Deputy threatened to remove Hu from the proceedings. *Id.* at ¶ 29.

During the State Court proceeding, Hu moved to intervene on behalf of two corporations,

Citywide Mortgage Lending Corporation and Citywide Real Estate Corp. *See* Cplt. Dk. 1, ¶ 40. Hu

was warned against filing any other pleadings or documents on behalf of anyone but himself lest Hu

face prosecution by the State's Attorney for practicing law without a license. *Id.* Hu appealed Judge

---

[1]  Incidentally, the *Evans* case is related to the same property at issue in the case before this Court.

Plether's decision to the Illinois Appellate Court and simultaneously filed federal claims against

Defendants Allen Meyer, Chief Judge Timothy C. Evans, Honorable Judges Pamela Hill Veal and

Sheryl Plethers, Brian Lewis, John Buscher, Park National Bank, Walinksi & Trunkett, and Robert

Walinski alleging violations of the Due Process and the Equal Protection Clauses and the Fair Debt

Collection Act.

On July 3, 2008, Hu filed his twelfth federal case– the fifth action filed this year– against

Florencio Ramirez and L.A. Auto Body Inc. alleging that the defendants treated him differently on

account of his race when they delayed repairs to his automobile. *See Hu v. L.A. Auto Body Inc.*, 08

C 3825.

Hu has also been a party-defendant in two federal causes of action. *See* 96 C 3428, and 98

C 7853.   In *Re/Max Intl Inc v. Quality Realty Inc.*, the Court held Hu in contempt of court and

sanctioned Hu $1,000 per day for failure to comply with court orders.   96 C 3428; Dk. 40, 44.

Default judgment was entered against Hu and Zhou.  Dk. 8.

### Hu's Cause of Action before this Court

Turning to Hu's cause of action before this Court, Hu filed his Complaint *pro se* on July 9,

2007.  In short, Hu alleged that he and his wife, Jun Zhou, were lessees of the second floor premises

of 219 W. Cermak in Chicago, Illinois. Dk. 1.  Defendant Huey was the lessor and Defendants Ip

and Chau run their accounting business in the same building as lessees.  When Hu signed the lease

agreement, Huey inserted a clause prohibiting Hu and Zhou from engaging in income tax

preparation in the building because his other tenants, Ip and Chau, agreed to pay a premium on their

lease with Huey so long as they were the only accounting business in the building.  Though Hu

signed the lease agreeing to the provision, Zhou told customers of their other businesses that she

6

could provide tax preparation services. Huey initiated eviction proceedings against Hu in Illinois

State Court on the basis that Hu failed to pay rent and failed to fix the plumbing (*see* subject matter

of *Hu v. Evans* described above 08 C 2007 and Hu's affidavit filed in his claim, Dk. 47). Hu filed

this action seeking damages, declaratory, and injunctive relief under the Sherman Act, the First

Amendment, the Illinois Antitrust Act, 42 U.S.C. §§ 1981 and 1982, the Illinois Retaliatory Eviction

Act, and fraud. Dk. 15. Hu's Section 1981 and 1982 claims alleged that Huey, who is Chinese,

discriminated against Hu, who is also Chinese. Count III alleged that Hu's First Amendment rights

were violated because he could not tell customers that Zhou could do their income taxes.[2]

On July 30, 2007, Defendants moved to dismiss Hu's Complaint. Dk. 8, 10. The Court

entered a briefing schedule on August 2, 2007. Dk. 14. Before briefing was completed on the

motion, Hu filed a First Amended Complaint and a Motion to "Amend/Correct Rule 15(a) motion

to amend complaint." Dk. 16. On August 30, 2007, the court denied Hu's Rule 15 (a) motion

without prejudice and denied Defendants' motions to dismiss as moot. The Court set another

briefing schedule on the Defendants' anticipated motion to dismiss the First Amended Complaint.

Reply briefs were due by October 11, 2007. Dk. 20. On September 20, 2007, Huey moved to

dismiss all of Hu's counts in the First Amended Complaint and Ip and Chau together moved to

dismiss Hu's First Amendment and state and federal antitrust claims. Dk. 21, 24. Before briefing

was completed on the pending motions to dismiss, Hu filed another motion to "Amend/Correct Rule

15 motion to amend complaint" and a Motion for Preliminary Injunction pursuant to 28 U.S.C. §

1651. Hu's Motion for Preliminary Injunction under § 1651 sought to stay the pending Circuit Court

eviction proceedings under the All Writs Act or pursuant to Federal Rule of Civil Procedure 65.

---

[2] Zhou, is a licensed accountant and Hu assisted her with research. Cplt. ¶¶ 20-21; 40.

On September 26, 2007, Hu's Motion to Amend and Motion for Preliminary Injunction was denied until after the Court had an opportunity to rule on Defendants' pending motions to dismiss the First Amended Complaint. Dk. 27. Despite the Court's order, Hu re-filed his motion for preliminary injunction on the day that Defendants' replies were due. Four days later, Hu filed his motion for preliminary injunction a third time, but this time styling it as "refile what was filed on October 11, 2007." Dk. 33. All three motions set forth the same arguments and sought the same relief. On October 17, 2007, this Court heard oral argument on Hu's Motion for Preliminary Injunction pursuant to 28 U.S.C. § 1651 seeking a stay of the circuit court action. Hu's Motion for Preliminary Injunction was denied on the basis that it sought an extraordinary remedy without asserting irreparable injury. The Court advised Hu that it would rule on the pending motions to dismiss.

On October 30, 2007, Defendants' Motions to Dismiss were granted and Hu's First Amended Complaint was dismissed with prejudice. Dk. 35. Additionally, the Court denied Hu's Motion to "Amend/correct Rule 15 Motion to Amend Complaint" and Hu's September 24, 2007 Motion for Preliminary injunction. Judgment was entered in favor of Defendants and all pending dates, motions, and schedules were terminated as moot. *Id.*

On November 9, 2007, Hu filed a Motion to Reconsider under Federal Rule of Civil Procedure 59. Dk. 37. Two days later, Hu filed a "Supplemental Brief of the Rule 59 Motion" without leave of court. Dk. 39. On November 15, 2007, the Court entered a briefing schedule and advised that it would rule on Hu's motion by mail. Dk. 40. Both Defendants filed responses and plaintiff filed a reply. Dk. 41-43. Three days after replies were filed, Hu filed a "Motion to Stay Eviction per Rule 65 and All Writs Act" which he docketed as a motion for "writ of mandamus."

8

Hu's motion with his fourth attempt to stay the circuit court proceeding under 28 U.S.C. § 1651 and Rule 65. On February 25, 2008, while the motions were still pending, Hu petitioned the Seventh Circuit for a Writ of Mandamus Staying the Execution of Possession Order by the Circuit Court of Cook County. Dk. 51, 52. On March 4, 2008, the Seventh Circuit denied Hu's petition. Dk. 57.

Motion to Reconsider

Hu moves to reconsider this Court's October 30, 2007 order dismissing his First Amended Complaint with prejudice. The only grounds for a Rule 59(e) motion are newly discovered evidence, an intervening change in the controlling law, and manifest error of law. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Hu does not argue that there is newly discovered evidence or that there was an intervening change in the controlling law. Instead, Hu argues that the Court 1) should have granted Hu leave to amend his complaint; 2) applied an incorrect legal standard to Defendants' motions to dismiss; 3) erred when it found that Hu did not and could not allege that any of the defendants were agents of the government in his First Amendment claim 4) erred when it found that Hu failed to allege facts that show Huey's intent to discriminate against Hu on the basis of race when Huey charged Hu higher rent for space in the Building than Huey charged State Farm Insurance; 5) erred when it dismissed his § 1982 claim; 6) and erred when it held that Hu did not adequately allege the jurisdictional requirement of interstate commerce. As a preliminary matter, Hu does not allege that this Court committed a manifest error of law and simply regurgitates arguments that he previously raised in the fully briefed motions to dismiss.

The Seventh Circuit defines "manifest error" as "'wholesale disregard, misapplication, or failure to recognize controlling precedent'" on the part of the court. *Oto v. Metro. Life Ins. Co.*, 224

9

F.3d 601, 606 (7th Cir. 2000); *quoting Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill.

1997)). Reconsideration is only appropriate when "the Court has patently misunderstood a party

or has made a decision outside the adversarial issues presented to the Court by the parties or has

made an error not of reasoning but of apprehension." *Spearman Indus., Inc. v. St. Paul Fire &

Marine Ins. Co.*, 139 F. Supp. 2d 943, 945 (N.D. Ill. 2001), *quoting Bank of Waunakee v. Rochester

Cheese Sales, Inc.,* 906 F.2d 1191, 1195 (N.D. Ill. 2001).

Regarding Hu's argument that this Court should have allowed him leave to amend his First

Amended Complaint and that the Court failed to apply the correct standard, a Court has discretion

in deciding when to allow parties to amend their pleadings. *Park v. City of Chicago*, 297 F.3d 606,

612 (7th Cir. 2002). Although every amendment after the first requires leave from the court, leave

should be liberally granted "when justice so requires." Fed. R. Civ. P. 15(a). Where a pro se

complaint is involved, district courts should in fact "allow ample opportunity" to amend. *Donald

v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). Save Count I, this Court did not

error when it dismissed Hu's First Amended Complaint with prejudice. First, Hu was allowed to

file an amended complaint on one occasion having had the benefit of reviewing the Defendants'

motions to dismiss. For the reasons set forth in the Court's Opinion as well as those stated below,

a review of Hu's First Amended Complaint proved that any further amendments to Hu's Section

1981, Section 1982, and First Amendment claims would have been futile under the law, and thus,

justice did not require that leave be given.

Hu further argues that this Court erred by applying the incorrect standard on a motion to

dismiss pursuant to Federal Rule 12(b)(6). To survive a motion to dismiss a plaintiff must allege

facts that plausibly suggest entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955,

10

1965-66 (2007). This Court found that even taking Hu's allegations as true, Hu failed to make a showing that he was plausibly entitled to relief on any of his claims. Minute Order, pp. 1-3. Accordingly, Hu's argument that this Court failed to take his assertions as true is incorrect; instead, this Court found that Hu effectively pleaded himself out of Court. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (A pro se complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint.)[3] Accordingly, this Court did not commit a manifest error of law when it declined to allow Hu yet another chance to amend his Complaint when Hu pleaded himself out of Court.

This Court dismissed Hu's Sherman Act claims on the basis that he failed to adequately allege the jurisdictional requirement and failed to allude in any manner to interstate commerce in his First Amended Complaint. It is axiomatic that in pleading a cause of action under the Sherman Act §§ 1, 2, the plaintiff must adequately allege the jurisdictional requirement of interstate commerce." *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1565 (7th Cir. 1991) (*quoting Marrese v. Interqual, Inc.*, 748 F.2d 373, 379 (7th Cir. 1984)). Hu can satisfy the jurisdictional requirement of interstate commerce by showing that 1) the tax preparation is itself "in" interstate commerce; or 2) the tax preparation has a "substantial effect on interstate commerce." *See McClain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 242 (1980). It was not manifest error to dismiss Hu's First Amended Complaint because it was jurisdictionally deficient. *See McLain v. Real Estate Bd.*, 444 U.S. 232 , 242 (1979); *citing Wickard v. Filburn*, 317 U.S. 111 (1942); *United States v. Darby*, 312 U.S. 100 (1941) (Jurisdiction may not be invoked under that statute unless the

---

[3] Hu's arguments that the Supreme Court's decision in *Bell Atlantic v. Twombly* "should be confined where it belongs: anti-trust cases involving parallel anti-competitive conduct" is wrong under any interpretation of its holding.

relevant aspect of interstate commerce is identified; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce.)

In Hu's Motion to Reconsider, he argues, for the first time, that the allegation in his First Amended Complaint that Jun Zhou e-files income taxes suffices to establish that interstate commerce is substantially affected. Mtn. Recons., p. 16. Hu failed to raise this argument during the briefing of the motion to dismiss despite the fact that the jurisdiction issue was raised by the Defendants. A motion for reconsideration cannot "serve as the occasion to tender new legal theories for the first time." *Publishers Res. v. Walker-Davis Publication*, 762 F.2d 557, 561 (7th Cir. 1985). Nevertheless, Hu failed to plead facts that would support finding interstate commerce based on the tax return services being an "integral part of an interstate transaction," *Goldfarb v. Va. State B.*, 421 U.S. 773, 785 (1975), or having a "substantial effect on interstate commerce." *McLain*, 444 U.S. at 242. Because "it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce," Hu's claim was properly dismissed. [4] *Id.* Moreover, Hu's argument that Zhou's accounting business provided electronic filing suffices to allege the jurisdictional requirement of interstate commerce is unsupported in the law. Hu cites no case law for the proposition that mere electronic

---

[4] Hu cites *United States v. Yellow Cab Company*, 332 U.S. 218 (1947), *overruled on other grounds*, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), in support of his argument that he sufficiently pleaded that jurisdictional requirement of interstate commerce in his Sherman Act Claim. *Yellow Cab*, however, is distinguishable in that *Yellow Cab* physically aided those interstate travelers by transporting them in between stations in the midst of their interstate travels. *Id.* at 228-29. The Court held, "All that we hold here is that when local taxicabs merely convey interstate train passengers between their homes and the railroad station in the normal course of their independent local service, that service is not an integral part of interstate transportation. And a restraint on or monopoly of that general local service, without more, is not proscribed by the Sherman Act." *Id.* at 233.

communications across state lines constitutes interstate commerce for purposes of the Sherman Act. Indeed, accepting this proposition would lead to untenable results, as any company that has ever made a long-distance telephone call or used e-mail could be said to have engaged in interstate commerce.

Despite having had the benefit of reviewing the parties motions to dismiss, Hu failed to plead a sufficient interstate connection nor did he argue that e-filing suffices as a jurisdiction element in his response brief to the Defendants' Motion to Dismiss. Hu has not provided newly discovered evidence or argued that there was an intervening change in the controlling law. Nor has Hu persuaded this Court that it disregarded, misapplied, or failed to recognize controlling precedent. Therefore, Hu's Motion to Reconsider as to Count I is denied. Count I– Hu's Sherman Act claim– was properly dismissed.[5]

Hu's Section 1981 claim was also appropriately dismissed. Section 1981 authorizes suits arising out of racial discrimination in the making and enforcing of contracts. *See* 42 U.S.C. § 1981. In order to state a claim under § 1981, a plaintiff must allege the following elements: (1) the plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes

---

[5] In addition to the reasons set forth in its Memorandum and Opinion order dismissing Count I, this Court further notes that Hu's pleadings run contrary to his ability to meet the requirements of both antitrust injury and antitrust standing. Hu has pleaded in his first Complaint that Jun Zhou prepared taxes for the last decade and that Hu helped her by performing legal research and advertising. Cplt. ¶¶ 20-21; 40. Hu attests in his affidavit that Zhou moved back into 219 W. Cermak in May, 2007. (¶2, Zhou and Hu Affidavit). "Not all persons who have suffered an injury flowing from [an] antitrust violation have standing to sue under § 4." *Kochert v. Greater Lafayette Health Servs.*, 463 F.3d 710, 715-16; (citing *In re Industrial Gas Antitrust Litigation*, 681 F.2d 514, 516 (7th Cir. 1982). "Only those parties who can most efficiently vindicate the purposes of the antitrust laws have antitrust standing to maintain a private action under § 4." *Id.*; (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 597-98 (7th Cir. 1995); (quoting *In re Industrial Gas*, 681 F.2d at 516).

the right to make and enforce contracts. *Id.*; *See also Daniels v. Pipefitters' Ass'n*, 945 F.2d 906, 913 (7th Cir. 1991); *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994); *Achor v. Riverside Golf Club*, 117 F.3d 339, 340 (7th Cir. 1997). The Statute defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981.

Hu does not allege that Defendants prevented Hu from entering in a contract; to the contrary, Hu leased a space from Defendant Huey. Moreover, Hu does not claim that his lease was modified or terminated on the basis of his race. Hu's factual basis for his Section 1981 claim is that Huey, who is Chinese, discriminated against Hu, who is also Chinese, by charging Hu and his business partner higher rent than their co-tenant, State Farm Insurance, because State Farm is "controlled by white people." Am. Cplt. ¶ 78. As pleaded, Hu's allegations are based in the assumption that State Farm has a racial identity and the assertion that a corporation, such as State Farm, has a racial identity has been rejected when considered in Section 1982 cases. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977).

Moreover, Hu's allegations run contrary to others in his First Amended Complaint. Specifically, Hu alleges that the rental price for the property was "fixed" because Huey required Defendants Ip and Chau to pay a "significant extra amount of money" to add the restrictive covenant to the lease. Because of the Huey/Ip and Chau agreement, Huey was "able to charge substantially higher above the market rent" to Hu and Zhou. Am. Cplt. ¶¶ 33-35. Hu claims that he "had no choice" but to agree to the terms of the restrictive covenant in his lease with Huey because 219 West Cermak was "the only space available" to rent. Then, paragraphs later, Hu alleges that there were other, but less desirable, spaces to rent in Chinatown. *See* Am. Cplt. ¶ 15. Finally, that Huey

14

discriminated against Hu on the basis of his race by charging him higher rent contradicts Hu's

allegations that Huey required Ip and Chau to pay a "significant extra amount of money" for their

leased space.

Hu's allegations are conclusory and contradictory and do not pass the speculative test set

forth in *Twombly*. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965-66 (2007).

Accordingly, Hu's Section 1981 claim was properly dismissed.

Count III- Hu's First Amendment claim– was also properly dismissed. In Count III, Hu

alleged that Defendants violated his First Amendment right to free speech by prohibiting Hu and

Zhou from telling their customers about their tax preparation business. The Court dismissed the

claim on the grounds that Hu failed to allege that Defendants were state actors. Hu does not dispute

that it is "commonplace that the constitutional guarantee of free speech is a guarantee only against

abridgment by government, federal or state." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976). Rather,

in Hu's Motion to Reconsider, he argues, for the first time, that Hu's First Amendment claim is

"intertwined" with this Sherman Act claim. Thus, Hu posits that because Defendants' restrictive

covenant in the lease is a "'per se' violation of state anti-trust law" enforcing the covenant in an

eviction could "very well turn this private action into a state action." Mtn. Reconsider, p. 9. Hu

cites no case law supportive of his assertions, and accordingly, this Court did not commit a manifest

error of law when it concluded that Hu's First Amendment claim failed as a matter of law because

Defendants are not state actors.[6]

---

[6] Hu's reliance upon *Shelley v. Kraemer* is misplaced. In *Shelley*, the restrictive covenant was itself unconstitutional as it disallowed the occupancy or ownership of the operty "by people of the Negro or Mongolian races," and thus, violated the Equal Protection Clause of the U.S. Constitution. 334 U.S. 1, 5 (1948). By invoking state judicial proceedings to enforce the restrictive covenants, the defendants enlisted the help of state courts to knowingly bring about unconstitutional ends (i.e., race-based discrimination). Here, Hu is not alleging that the restrictive covenant is itself unconstitutional or that the restrictive covenant is being

15

Count VII- Hu's Section 1982 claim– was properly dismissed. Under Section 1982, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. As the Supreme Court has stated, Section 1982 is concerned with "the right of black persons to hold and acquire property on an equal basis with white persons and [to provide for] the right of blacks not to have property interests impaired because of their race." *City of Memphis v. Greene*, 451 U.S. 100, 122 (1981). Hu's Section 1982 claim was dismissed for failure to allege facts that plausibly entitle him to relief. Namely, Hu's Section 1982 claim was based upon the conclusory allegation that Huey charged Hu higher rent than State Farm Insurance because State Farm is controlled by white people. Understanding that Section 1982 is meant to protect the enforceability of property interests acquired by minority citizens and their right to use the property on an equal basis with whites, Hu's claim fails as a matter of law because State Farm, as a corporation, does not have a racial identity, *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977), and thus, Hu's allegation that he didn't enjoy the same rights as "white people" fails as a matter of law. Additionally, Hu's First Amended Complaint failed to allege any of the requisite elements of a Section 1982 claim. Accordingly, Hu's Section 1982 claim was properly dismissed.[7]

_____

used to unconstitutional ends. Instead, he is alleging that Huey attempted to restrain his speech by including and enforcing a restrictive covenant barring tax services on the leased property. Similarly, *Lugar v. Edmonson Oil* is distinguishable on the basis that it was confined to the Fourteenth Amendment of the U.S. Constitution. 457 U.S. 922, 941-42 (1982). Nevertheless, none of these arguments were put before the Court in Response to Defendants' Motion to Dismiss the First Amended Complaint.

[7] Hu's argument that State Farm has a racial identity was made for the first time in his Motion to Reconsider. Hu cites *Hudson Valley v. Freedom Theater* in support of his argument, but *Hudson Valley* is distinguishable from *Arlington Heights* because it was limited to the issue of standing and involved a corporation whose goals were to reach out to particular races. 671 F. 2d 702, 705 (2nd Cir. 1982).

The Court did not have supplemental jurisdiction over Hu's state law claims and thus does not reach the merits of those claims. *See* 28 U.S.C. § 1367(a). At the time the Court dismissed Hu's claim, it held that "Hu may pursue [his state law] claims in state court, where a remedy for wrongful eviction may well be available."[8]

For the reasons stated, Hu's Motion to Reconsider is denied. Dk. 37. Hu's Motion for Writ of Mandamus is dismissed as moot. Dk. 45.[9] Based on Hu's pattern of violation of Court orders and abusive filings as set forth in the factual background in this opinion, this Court refers Yaodi Hu to the Executive Committee to consider whether he should be subjected to filing restrictions in the Northern District of Illinois.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:    July 18, 2008

---

[8]   Hu filed a Bystander's Report pursuant to Illinois Supreme Court Rule 323(c) where he recounted the October 18, 2007 hearing and December 13, 2007 trial in state court. Dk. 48. According to Hu's Bystander's Report, Huey raised defenses such as failure to pay rent and make required repairs to the plumbing under the terms of the lease. Hu insisted upon participating in the trial despite the fact that he refused to consent to the Court's jurisdiction. Hu finally consented after the State Court Judge ordered his removal from the bench. Hu could have raised any number of his many defenses to the state court eviction proceeding, as by his own account, a full trial and hearing was held on the merits of the case.

[9]   As reflected in the docket, this is Hu's fourth attempt to stay the circuit court proceedings. Each time Hu files a motion he adds additional research but has essentially asks for the same relief under the save provision–namely, a stay of proceedings under 28 U.S.C. 1651 and Rule 65. In Hu's fourth motion, he offers no additional bases for staying the Circuit Court proceeding, and in fact, he refers to a Bystander's Report– in which Hu himself is the bystander–which states that the State Court proceedings were held on October 18 and December 13, 2007.

# Exhibit C

Westlaw.

--- F.3d ----
--- F.3d ----, 2008 WL 2941171 (C.A.7 (Ill.))

**H**

Windy City Metal Fabricators & Supply, Inc. v.
CIT Technical Financing Services, Inc.
C.A.7 (Ill.),2008.
Only the Westlaw citation is currently available.
United States Court of Appeals,Seventh Circuit.
WINDY CITY METAL FABRICATORS & SUP-
PLY, INCORPORATED and Midwest Ink Com-
pany, on Behalf of Itself and All Others Similarly
Situated, Plaintiffs-Appellants,
v.
CIT TECHNOLOGY FINANCING SERVICES,
INCORPORATED and Reed Smith, a New Jersey
Limited Partnership, Defendants-Appellees.
No. 07-1567.

Argued Oct. 25, 2007.
Decided Aug. 1, 2008.

**Background:** Customers filed complaint against
entity to which their equipment rental agreements
had been sold for entity's alleged common law
fraud and violations of provisions of the Illinois
Consumer Fraud and Deceptive Business Practices
Act. The United States District Court for the North-
ern District of Illinois, Wayne R. Andersen, J.,
2007 WL 495276, granted motion to dismiss for
failure to state claim, and customers appealed.

**Holdings:** The Court of Appeals, Ripple, Circuit
Judge, held that:
(1) allegations in customers' complaint failed to
plead fraud with requisite particularity and were in-
sufficient to state claim for common law fraud;
(2) complaint to recover for defendants' alleged un-
fair practices in violation of the Illinois Consumer
Fraud and Deceptive Business Practices Act only
had to satisfy notice pleading standard, and did not
have to satisfy any heightened particularity stand-
ard; and
(3) allegations in customers' complaint against en-
tity to which their equipment rental agreements had
been sold were sufficient to state claim for unfair
practices.

Affirmed in part and reversed and remanded in part.

**[1] Federal Courts 170B ⇐➡776**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk776 k. Trial De Novo. Most
Cited Cases
Court of Appeals reviews de novo a district court's
grant of motion to dismiss for failure to state claim.
Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⇐➡636**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(A) Pleadings in General
         170Ak633 Certainty, Definiteness and
Particularity
         170Ak636 k. Fraud, Mistake and Con-
dition of Mind. Most Cited Cases
Circumstances of fraud or mistake, such as plaintiff
must plead with particularity under heightened fed-
eral pleading rules, include identity of person who
made misrepresentation, time, place, and content of
misrepresentation, and method by which misrepres-
entation was communicated to plaintiff. Fed.Rules
Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⇐➡636**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(A) Pleadings in General
         170Ak633 Certainty, Definiteness and
Particularity
         170Ak636 k. Fraud, Mistake and Con-
dition of Mind. Most Cited Cases
Allegations in customers' complaint against entity
to which their equipment rental agreements had
been sold were insufficient to state claim for com-
mon law fraud, where complaint, while alleging at

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**EXHIBIT C**

--- F.3d ----
--- F.3d ----, 2008 WL 2941171 (C.A.7 (Ill.))

length the fraud perpetrated by the now-bankrupt company that had sold their rental agreements, did not allege the what, when and how of any misrepresentations made by defendant with particularity required under federal pleading rules. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[4] Antitrust and Trade Regulation 29T ☞ 128**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk126 Constitutional and Statutory Provisions
                29Tk128 k. Purpose and Construction in General. Most Cited Cases
Illinois Consumer Fraud and Deceptive Business Practices Act is regulatory and remedial statute meant to protect consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices. S.H.A. 815 ILCS 505/1 et seq.

**[5] Antitrust and Trade Regulation 29T ☞ 135(1)**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk135 Practices Prohibited or Required
                    29Tk135(1) k. In General; Unfairness. Most Cited Cases

**Antitrust and Trade Regulation 29T ☞ 136**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk136 k. Fraud; Deceit; Knowledge and Intent. Most Cited Cases

Recovery under the Illinois Consumer Fraud and Deceptive Business Practices Act may be had for unfair as well as deceptive conduct. S.H.A. 815 ILCS 505/1 et seq.

**[6] Antitrust and Trade Regulation 29T ☞ 135(1)**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk135 Practices Prohibited or Required
                    29Tk135(1) k. In General; Unfairness. Most Cited Cases
Three considerations guide Illinois courts in deciding whether practice is "unfair" under the Illinois Consumer Fraud and Deceptive Business Practices Act: (1) whether practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; and (3) whether it causes substantial injury to consumers. S.H.A. 815 ILCS 505/1 et seq.

**[7] Antitrust and Trade Regulation 29T ☞ 135(1)**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk135 Practices Prohibited or Required
                    29Tk135(1) k. In General; Unfairness. Most Cited Cases
Three considerations that guide Illinois courts in determining whether a practice is "unfair" under the Illinois Consumer Fraud and Deceptive Business Practices Act, i.e., the "public policy," moral/ethical, and "harm to consumers" criteria, need not all be satisfied for practice to be found unfair; indeed, practice may be "unfair" because of degree to which it meets one of these three criteria, or because, to lesser extent, it meets all three. S.H.A.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2941171 (C.A.7 (Ill.))

815 ILCS 505/1 et seq.

**[8] Antitrust and Trade Regulation 29T** ☞**358**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and
Consumer Protection
        29TIII(E) Enforcement and Remedies
            29TIII(E)5 Actions
                29Tk356 Pleading
                    29Tk358 k. Particular Cases. Most
Cited Cases

**Federal Civil Procedure 170A** ☞**636**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and
Particularity
                170Ak636 k. Fraud, Mistake and Con-
dition of Mind. Most Cited Cases
Complaint to recover for defendants' alleged unfair
practices in violation of the Illinois Consumer
Fraud and Deceptive Business Practices Act only
had to satisfy notice pleading standard, and did not
have to satisfy any heightened particularity stand-
ard, given that neither fraud nor mistake was ele-
ment of "unfair conduct" under this Illinois Act.
Fed.Rules Civ.Proc.Rules 8(a), 9(b), 28 U.S.C.A.;
S.H.A. 815 ILCS 505/1 et seq.

**[9] Federal Courts 170B** ☞**433**

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(C) Application to Particular Matters
            170Bk433 k. Other Particular Matters.
Most Cited Cases
Federal court sitting in diversity applies federal
pleading requirements, even when the claim pled
arises under state rather than federal law.

**[10] Federal Courts 170B** ☞**373**

170B Federal Courts
    170BVI State Laws as Rules of Decision

        170BVI(A) In General
            170Bk373 k. Substance or Procedure; De-
terminativeness. Most Cited Cases
District court exercising jurisdiction because parties
are of diverse citizenship must apply state substant-
ive law and federal procedural law.

**[11] Federal Courts 170B** ☞**373**

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(A) In General
            170Bk373 k. Substance or Procedure; De-
terminativeness. Most Cited Cases
In evaluating whether a particular state law is
"procedural" or "substantive," for purposes of de-
ciding whether it must apply that law when sitting
in diversity, federal district courts take as their
starting point the principle that outcome of litiga-
tion in federal court should be substantially the
same, so far as legal rules determine outcome of lit-
igation, as it would be if tried in state court.

**[12] Federal Courts 170B** ☞**373**

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(A) In General
            170Bk373 k. Substance or Procedure; De-
terminativeness. Most Cited Cases
When faced with conflict between state and federal
rule of procedure, federal court sitting in diversity
must first decide whether there is actual conflict
between these rules by determining whether scope
of federal rule is sufficiently broad to control issue
before court; if federal rule is sufficiently broad to
control issue, court must then evaluate the rule to
ensure that it has neither exceeded the Congression-
al mandate embodied in the Rules Enabling Act nor
transgressed Constitutional bounds, in which case it
should be applied, despite the fact that its applica-
tion might alter mode of enforcing state-created right.

**[13] Antitrust and Trade Regulation 29T** ☞ **358**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(E) Enforcement and Remedies
            29TIII(E)5 Actions
                29Tk356 Pleading
                    29Tk358 k. Particular Cases. Most Cited Cases
Federal notice pleading standard, rather than conflicting state law standard, governed whether allegations in complaint that was before district court pursuant to its diversity jurisdiction were sufficient to state claim under "unfair practices" provision of the Illinois Consumer Fraud and Deceptive Business Practices Act; prescribing specificity with which claim had to be pled related solely to practice and procedure of court and clearly fell within scope of the Rules Enabling Act, and there was no basis for concluding that regulation of pleading requirements in federal court exceeded limits of federal constitutional authority. 28 U.S.C.A. § 2072; Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.; S.H.A. 815 ILCS 505/1 et seq.

**[14] Antitrust and Trade Regulation 29T ⊂⇒ 161**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(B) Particular Practices
            29Tk161 k. Representations, Assertions, and Descriptions in General. Most Cited Cases
Allegations in customers' complaint against entity to which their equipment rental agreements had been sold were sufficient to state claim for unfair practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, where complaint alleged that defendant had used unfair practices, specifically the dissemination of false advertisements fore purpose of inducing customers to enter into unconscionable equipment rental agreements, further alleged that defendant attempted to enforce these agreements, and finally alleged that customers had suffered loss as a result of these allegedly illeg-

al equipment rental agreements. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.; S.H.A. 815 ILCS 505/1 et seq.

David A. Novoselsky (argued), Novoselsky Law Office, Chicago, IL, for Plaintiffs-Appellants.
Edward F. Ryan (argued), Holland & Knight, George M. Hoffman, Michael T. Trucco (argued), Stamos & Trucco, Chicago, IL, for Defendants-Appellees.

Before EASTERBROOK, Chief Judge, and RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.
*1 Windy City Metal Fabricators & Supply Inc. ("Windy City") sued CIT Technology Financing Services ("CIT") and the law firm Reed Smith in Illinois state court. After Reed Smith removed the action to the district court based on diversity of citizenship,[FN1] Midwest Ink Co. was added as a plaintiff. CIT and Reed Smith filed a motion to dismiss, which the district court granted. The plaintiffs timely appealed the dismissal.[FN2]For the reasons stated in this opinion, we affirm in part and reverse in part the judgment of the district court. The case is remanded for further proceedings consistent with this opinion.

I

BACKGROUND

A.

Because this case comes to us after the district court dismissed the complaint for failure to state a claim, we take as true the facts alleged in the complaint. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir.2008). The events at issue in this appeal came about as a result of the activities of Norvergence, a now-bankrupt company. When still in business, Norvergence leased to business customers

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2941171 (C.A.7 (Ill.))

a telecommunications service package called the Matrix Solution. The package included the customer's communication service and hardware that could be leased only from Norvergence through an equipment rental agreement. Norvergence claimed that the equipment contained proprietary components that reduced a user's telecommunications bill; in fact, the equipment had no effect on the customer's telecommunications services. In some instances, Norvergence did not even connect the devices.

After Norvergence entered into an equipment rental agreement with a customer, it assigned that agreement to one of a number of third parties. The customer received standard telecommunications equipment that actually was worth only a small fraction of the customer's monthly payment on the equipment rental agreement. Norvergence used the funds, which it obtained by selling the equipment rental agreement to the third party, to pay the customer's telecommunications services bill. Norvergence was unable, however, to continue to pay its customers' bills because it paid more for the monthly services than it obtained by selling the rental agreements. Norvergence went bankrupt. Its customers were left without telecommunications service, but they had continuing obligations under the equipment rental agreement to pay the third-party assignee for the equipment.

Windy City and Midwest Ink are two businesses that purchased these equipment rental agreements from Norvergence. Norvergence sold their rental agreements to CIT. When Norvergence later went bankrupt, Windy City and Midwest Ink stopped receiving telecommunications services because Norvergence was no longer paying for the services. Windy City and Midwest Ink nevertheless had a continuing obligation under the assigned equipment rental agreement to lease equipment from CIT.

The Illinois Attorney General obtained a default judgment against Norvergence in an Illinois court. Under that judgment, the contracts between Norvergence and its Illinois consumers were held to have been void *ab initio* because they stemmed from so-

licitations that were the result of unfair business practices and fraud on the part of Norvergence. Reed Smith, acting on behalf of CIT, then executed an Assurance of Voluntary Discontinuance (the "Assurance") with the Illinois Attorney General. Under its terms, CIT offered to reduce by eighty-five percent the amount that each customer owed to CIT on its rental agreement and to refund sixty-seven percent of the insurance-related charges paid by the customer on the rental agreements.

**\*2** As required by the Assurance, CIT sent a settlement letter directly to each of its lessees, including Windy City and Midwest Ink. Shortly thereafter, Reed Smith also sent a letter to Windy City's attorneys in order to ensure that they were aware of the letter. Midwest Ink accepted the settlement offer, but Windy City did not accept it.

### B.

In 2005, Windy City filed its original proposed class action complaint against CIT in Illinois state court. It sought to represent Norvergence customers whose rental agreements had been assigned to CIT. Reed Smith was added as a defendant in the fall of 2005, and it removed the action to the district court. Midwest Ink was added subsequently as a plaintiff to represent the potential class members who had accepted CIT's settlement offer. The revised second amended complaint, the operative version on this appeal, set forth eight counts, including claims of common-law fraud and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("Consumer Fraud Act"). The complaint sought compensatory, statutory and punitive damages, as well as preliminary and permanent injunctive relief, against both CIT and Reed Smith.

The district court dismissed the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to plead fraud with the specificity required by Federal Rule of Civil Procedure 9(b). The plaintiffs moved for leave to further

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2941171 (C.A.7 (Ill.))

amend the complaint, but the district court denied their motion. The plaintiffs timely appealed.

## II

### DISCUSSION

[1] We review de novo a district court's grant of a Rule 12(b)(6) motion to dismiss. *Tamayo,* 526 F.3d at 1081.As a general rule, in testing the sufficiency of a complaint, notice pleading remains the standard. A plaintiff's complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief" that is also sufficient to provide the defendant with "fair notice" of the claim and its basis. *Bell Atl. Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007); Fed.R.Civ.P. 8(a)(2). In order to demonstrate that he is entitled to relief, however, the pleader must show through his allegations that "it is plausible, rather than merely speculative, that he is entitled to relief."*Tamayo,* 526 F.3d at 1083 (quotation omitted); *see also Bell Atl.,* 127 S.Ct. at 1965-66.A complaint must do more than merely *"avoid foreclosing* possible bases for relief."*Tamayo,* 526 F.3d at 1084 (quotation omitted). It "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level."*Id.* (quotation omitted).

[2] In the present case, the plaintiffs' complaint includes claims against CIT and Reed Smith that allege common-law fraud and violations of the Consumer Fraud Act. The parties agree that, with respect to most of these claims, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) govern. Under Rule 9(b), a plaintiff must state with particularity "all averments of fraud or mistake."Fed.R.Civ.P. 9(b); *see also Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1078 (7th Cir.1997). The circumstances of fraud or mistake include "the identity of the person who made the misrepresentation, the time, place and

content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."*Gen. Elec. Capital,* 128 F.3d at 1078 (quotation omitted); *see also DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990) (describing Rule 9(b) particularity as "the who, what, when, where, and how: the first paragraph of any newspaper story").

*3 The plaintiffs believe that the district court erred in dismissing their common law fraud claims against CIT and Reed Smith for failure to state with particularity the circumstances of the alleged fraud. They also submit that their claims against CIT under the Consumer Fraud Act may go forward without meeting the particularity requirement of Rule 9(b).[FN3] We now address each of these contentions.

### A.

### Fraud Claims

[3] The district court dismissed all of the plaintiffs' claims against CIT and Reed Smith on the ground that the claims sounded in fraud but failed to meet the particularity requirement of Rule 9(b). The court ruled that, although the complaint described Norvergence's fraud with particularity, it failed to describe CIT's connection to any fraud with the particularity required by Rule 9(b). The court also held that the plaintiffs had failed to state with particularity the fraud allegedly committed by Reed Smith. The district court therefore dismissed all the fraud claims against CIT and Reed Smith because the plaintiffs had failed to plead who had made a fraudulent statement, when the fraudulent statement was made and how the fraudulent statement was communicated.

On appeal, the plaintiffs' only contention is that the district court wrongly required them to provide *evidence* of fraud to defeat a Rule 12(b)(6) motion. They correctly point out that the district court em-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ployed the word "evidence" when describing the allegations that the complaint failed to state with particularity. For instance, the district court said that "[n]o evidence ... [was] offered to establish who at CIT knew that the assigned [equipment rental agreement] was for a bundled service and equipment lease agreement, or name the individuals who should have known, when they should have known, or how they would have known."*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, No. 05 C 5451, 2007 WL 495276, at *4 (N.D.Ill. Feb.9, 2007).

Despite its use of inartful terminology, the district court properly dismissed the plaintiffs' fraud claims for failure to state with particularity "who made the fraudulent statement, when the fraudulent statement was made, and how the fraudulent statement was made."*Id.* at *3. The district court did not require the complaint to provide actual evidence of the claims; it merely required that the claims be pleaded with the requisite particularity. *See id.*Moreover, the district court correctly determined that the complaint failed to plead with particularity the who, when and how of the alleged frauds, all of which are required by Rule 9(b) for allegations of fraud. *See Gen. Elec. Capital*, 128 F.3d at 1078;*DiLeo*, 901 F.2d at 627.The district court therefore properly dismissed the fraud counts for failure to comply with Rule 9(b).[FN4]

**B.**

**"Unfair Conduct" Under The Consumer Fraud Act**

The plaintiffs submit that their claim under the Illinois Consumer Fraud Act may go forward without meeting the heightened standard of pleading fraud claims under Rule 9(b). In their view, a claim under the Consumer Fraud Act may allege either deceptive practices, which sound in fraud, or unfair practices, which do not. Because the allegations in Count I do not allege fraud but an unfair

trade practice, they maintain, the governing pleading standard is the one contained in Rule 8.

**1.**

*4 [4][5][6][7] The Illinois Consumer Fraud Act "is a regulatory and remedial statute intended to protect consumers ... against fraud, unfair methods of competition, and other unfair and deceptive business practices."*Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002). The Supreme Court of Illinois has held that recovery under the Consumer Fraud Act "may be had for unfair as well as deceptive conduct."*Id.* In interpreting unfair conduct under the Consumer Fraud Act, Illinois courts look to the federal interpretations of unfair conduct under section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45. *Robinson*, 266 Ill.Dec. 879, 775 N.E.2d at 960; 815 ILCS 505/2. Thus, three considerations guide an Illinois court's determination of whether conduct is unfair under the Consumer Fraud Act: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers."*Robinson*, 266 Ill.Dec. 879, 775 N.E.2d at 961.A court may find unfairness even if the claim does not satisfy all three criteria. *Id.* For example, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three."*Id.*

[8] Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b). Therefore, under federal notice pleading standards, the complaint need only provide a short and plain statement of the claim that shows, through its allegations, that recovery is plausible rather than merely speculative. *Tamayo*, 526 F.3d at 1083;*see also Bell Atl.*, 127 S.Ct. at 1964;Fed.R.Civ.P. 8(a)(2).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

## 2.

[9] By contrast with the federal pleading regimen under Rule 8, Illinois requires fact pleading even to non-fraud claims. *See Knox Coll. v. Celotex Corp.,* 88 Ill.2d 407, 58 Ill.Dec. 725, 430 N.E.2d 976, 985 (1981); *Robinson,* 266 Ill.Dec. 879, 775 N.E.2d at 961 (reviewing an appellate court's holding that none of a plaintiff's allegations had been stated with sufficient particularity and specificity to show that the defendant's conduct was unfair), 962 ("Plaintiffs argue here that all automobile leases have standard provisions and that leases are not negotiable. However, no such averments appear in the pleadings. Thus, the appellate court correctly held that plaintiffs' bald claim of unfairness ... was not sufficient to state a claim."). We can see no reason, however, why the standards of Rule 8 of the Federal Rules of Civil Procedure, rather than Illinois fact pleading requirements, should not apply here. It is well settled that a federal court sitting in diversity applies federal pleading requirements "even when the claim pleaded arises under state rather than federal law."*Muick v. Glenayre Elecs.,* 280 F.3d 741, 743 (7th Cir.2002) (applying federal pleading requirements to an Illinois cause of action); *see also Heffernan v. Bass,* 467 F.3d 596 (7th Cir.2006) (same); *Johnson v. Hondo, Inc.,* 125 F.3d 408, 417 (7th Cir.1997) ("[I]t is rudimentary that pleading requirements in the federal courts are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting."(internal quotation marks omitted)); *Colton v. Swain,* 527 F.2d 296, 304 (7th Cir.1975). Although we have never explained in detail the basis for this determination, a review of the basic principles governing federal-state choice of law in the context of federal diversity jurisdiction makes clear that the federal rule must be the governing approach in this case.

*5 [10][11] It is, of course, well established that, as a general matter, a district court exercising jurisdiction because the parties are of diverse citizenship must apply state substantive law and federal pro-

cedural law. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When evaluating whether a particular state law is procedural or substantive, district courts take as their starting point the "outcome-determinative" test of *Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In that case, the Supreme Court held that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."[FN5]*Id.*

[12] The bedrock case for the precise issue that confronts us today, however, must be a case that followed *Guaranty Trust-Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). In *Hanna,* the Court was confronted, as we are today, with a conflict between a state rule of procedure and a federal rule of procedure. 380 U.S. at 469-70, 85 S.Ct. 1136.The Court set forth the approach that must guide our present inquiry: We must determine whether there is an *actual* conflict between the federal and the state rule by determining "whether the scope of the federal rule is sufficiently broad to control the issue before the court."*Id.* at 470, 85 S.Ct. 1136.If the federal rule is sufficiently broad to control the issue, then we must evaluate the rule to ensure that the rule has not "exceeded the congressional mandate embodied in the Rules Enabling Act nor transgressed constitutional bounds."*Id.* at 464, 85 S.Ct. 1136.If the federal rule does fall within constitutional boundaries, then it should be applied, despite the fact that its application might alter the mode of enforcing a state-created right. *Id.* at 473-74, 85 S.Ct. 1136.If it is not, then the traditional *Erie* analysis of *Guaranty Trust* is appropriate and the court should proceed to apply the outcome-determinative test. *Id.* at 470, 85 S.Ct. 1136.

On several occasions, in applying the approach it outlined in *Hanna,* the Supreme Court had to focus on whether there was an irreconcilable conflict between a federal and a state rule of procedure. We turn briefly to those cases to determine whether the difference between the federal approach to pleading

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2941171 (C.A.7 (Ill.))

and the Illinois approach is an irreconcilable one. In *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the Court determined that Rule 3 of the Federal Rules of Civil Procedure, which addresses when an action is commenced in federal court, was not sufficiently broad to address the effect of the tolling of a state statute of limitations on when a case commences under state law. That determination, said the Court, is a substantive policy decision of the state as to the deadline after which a defendant may have peace of mind and after which it would be unfair to expect the defendant to mount a defense. *Walker,* 446 U.S. at 751, 100 S.Ct. 1978.

By contrast, in *Burlington Northern Railroad Co. v. Woods,* 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987), the Supreme Court determined that there was a true conflict between a federal rule of procedure and a state statute. In that case, a state statute provided that when an appellate court affirmed a money judgment without substantial modification, it was to impose a ten-percent penalty on any appellant who had obtained a stay of that judgment pending appeal by executing a bond. By contrast, Federal Rule of Appellate Procedure 38 affords the federal courts of appeals plenary discretion to award damages upon a determination that the appeal was frivolous. The Court held that a federal appellate court ought to apply the federal rule. The two rules conflicted, and the federal rule was a constitutional exercise of federal rule-making authority and affected only the *process* of enforcing litigants' rights and not the rights themselves. *Id.* at 8, 107 S.Ct. 967.

\*6 [13] Here, it is clear that a conflict between the federal and state pleading rule does exist. *Compare*Fed.R.Civ.P. 8 (requiring only notice pleading), *with*735 ILCS 5/2-601 (requiring that pleadings contain substantial allegations of fact), *and Knox Coll.,* 58 Ill.Dec. 725, 430 N.E.2d at 985-86 (same). The federal and the state provisions address the same subject and require adherence to conflicting standards.

Continuing to follow the analytical model of *Hanna,* we next ask whether Rule 8 is within the congressional mandate. The Rules Enabling Act gives the Supreme Court "the power to prescribe, by general rules, the forms of process, writs, *pleadings,* and motions ... of the district courts of the United States."28 U.S.C. § 2072 (emphasis added). Prescribing the specificity with which a claim must be pleaded relates solely to the practice and procedure of a court and clearly falls within the scope of the Rules Enabling Act. There is, moreover, no basis for concluding that the regulation of pleading requirements in federal court is beyond the limits of federal constitutional authority. *See Hanna,* 380 U.S. at 464, 85 S.Ct. 1136.Consequently, we evaluate the state-law claims in this case under the federal pleading standards.

3.

[14] When we turn to the unfair conduct allegations of Count I, it is clear that this claim meets the federal notice pleading standards by "providing allegations that raise a right to relief above the speculative level."*Tamayo,* 526 F.3d at 1084 (quotation omitted). Count I alleges that CIT used unfair practices, specifically the dissemination of false advertisements for the purpose of inducing the plaintiffs to enter into unconscionable equipment rental agreements. It further alleges that CIT violated the Consumer Fraud Act by attempting to enforce those agreements. R. 79 at ¶ 77. Finally, the complaint goes on to allege that the plaintiffs suffered a loss as a result of these allegedly illegal equipment rental agreements. These allegations address the three considerations that, in combination, guide a court's determination of whether conduct is unfair. *See Robinson,* 266 Ill.Dec. 879, 775 N.E.2d at 961 (holding that an unfairness determination should consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers"). Although the complaint does not use specifically the words "immoral, unethical, oppressive, or unscrupulous,"

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 2941171 (C.A.7 (Ill.))

Page 10

it alleges conduct that, if proven, could support this statutory definition of unfairness under the Consumer Fraud Act. *See id.* By claiming that CIT engaged in unfair conduct and averring facts that, if proven, make relief more than merely speculative, *Tamayo,* 526 F.3d at 1084, the plaintiffs stated adequately a claim for relief.

It is important to note that, in the procedural posture of this case, we must take the allegations of the plaintiffs in the light most favorable to them. Indeed, CIT has not answered the complaint at this stage and its position on such matters as the holder in due course defense and, specifically, the implications of the Assurance which it executed with the Attorney General of Illinois has not been stated explicitly in the present procedural context. *See IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union,* 512 F.3d 989 (7th Cir.2008).

### Conclusion

*7 For the foregoing reasons, we hold that the district court dismissed properly the entirety of the plaintiffs' fraud claims, but that the court erred in dismissing the plaintiffs' claims for unfair practices under the Illinois Consumer Fraud Act against CIT. The judgment of the district court accordingly is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion. Reed Smith may recover the costs of this appeal. The other parties shall bear their own costs of this appeal.

AFFIRMED in part and REVERSED and REMANDED in part

FN1. The federal court had diversity jurisdiction under 28 U.S.C. § 1332. Windy City and Midwest Ink are Illinois corporations with their principal places of business in Illinois. CIT is a Massachusetts corporation with its principal place of business in New Jersey. Reed Smith is a limited liability partnership that, at the time of removal,

had no partners who were citizens of Illinois.

FN2. We have appellate jurisdiction under 28 U.S.C. § 1291.

FN3. The plaintiffs additionally contend, without relying on factual or legal support, that the district court erred in refusing to permit them to file a third amended complaint. An appellant is required to provide "citations to the authorities and parts of the record" in support of his argument. Fed. R.App. P. 28(a)(9). "We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Tyler v. Runyon,* 70 F.3d 458, 464 (7th Cir.1995) (quotation omitted). We therefore shall not address this perfunctory and underdeveloped argument on appeal. *Id.; see also Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir.2005).

FN4. Count 5 of the operative complaint also alleges that Reed Smith, the law firm that represented CIT, conspired to accomplish the fraudulent scheme allegedly undertaken by its client. This claim must fail as well. Reading the allegations of this claim in the light most favorable to the plaintiffs, it simply alleges that Reed Smith negotiated on behalf of its client with the Attorney General of Illinois and then counseled its client with respect to how to comply with the resulting agreement.

FN5. In *Guaranty Trust,* the Court determined that applying a state statute of limitations was appropriate despite the fact that such statutes often are referred to as "procedural." *Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

C.A.7 (Ill.),2008.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
Page 11
--- F.3d ----, 2008 WL 2941171 (C.A.7 (Ill.))


Windy City Metal Fabricators & Supply, Inc. v.
CIT Technical Financing Services, Inc.
--- F.3d ----, 2008 WL 2941171 (C.A.7 (Ill.))

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Exhibit D

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22282523 (N.D.Ill.)

C
Donley v. Nordic Properties, Inc.
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Pecola DONLEY, Plaintiff,
v.
NORDIC PROPERTIES, INC. d/b/a Country Faire
Village and Dennis A. Brebner d/b/a Dennis Brebn-
er & Associates, Defendants.
No. 99 C 4677.

Sept. 30, 2003.

### MEMORANDUM, OPINION AND ORDER

ANDERSEN, J.
*1 This case is before the Court on the cross mo-
tions for summary judgment filed by Plaintiff
Pecola Donley and Defendants Nordic Properties,
Inc. d/b/a Country Faire Village ("Country Faire")
and Dennis A. Brebner d/b/a Dennis Brebner & As-
sociates ("Brebner"). For the following reasons, we
grant in part and deny in part Plaintiff's summary
judgment motion and grant in part and deny in part
the summary judgment motion of the Defendants.

### BACKGROUND

Defendant Country Faire is an Illinois Corporation
that rents out apartments. Defendant Dennis Brebn-
er is Country Faire's attorney who practices law at
Dennis Brebner & Associates, where he regularly
engages in collection work. Plaintiff Pecola Donley
is a former tenant of Country Faire.

On March 10, 1993, Brebner filed a complaint in
the Circuit Court of Lake County, Illinois for for-
cible entry and retainer on behalf of Country Faire.
In that lawsuit, Country Faire requested judgment
against Donley for possession of the property she
was then occupying, the sum of $1,445 in overdue

rent, and the costs and reasonable attorney's fees of
the lawsuit. Following the filing of the case, Donley
vacated the premises. On March 25, 1993, the Cir-
cuit Court of Lake County dismissed this case, No.
93 LM 764, with prejudice and without costs and
declared that "all matters in controversy for which
said action was brought" hav e been "fully settled,
compromised and adjourned."

On June 14, 1996, Defendant Brebner filed a
second lawsuit, Case No. 96 AR 1146, against Don-
ley on behalf of Country Faire, seeking payment for
past due rent in the amount of $3,179.16. Defend-
ants did not advise the court about the dismissal in
case 93 LM 764 at any point in these proceedings.
On July 15, 1996, the Circuit Court of Lake County
entered judgment by default against Plaintiff in the
requested amount in case No. 96 AR 1146.On Janu-
ary 14, 1998, Defendants obtained an attachment
order against Plaintiff, instructing the Lake County
Sheriff to arrest her and setting her bail at $1,000.

Donley was either absent or hiding out in her house
during the Sheriff's subsequent attempts to arrest
her in January 1998. In February 1998 she retained
an attorney, Leon I. Edelson. The same month, Mr.
Edelson forwarded Brebner a copy of the original
dismissal order in case number 93 LM 764 and re-
quested that Defendants drop the case against his
client because the matter of past due rent had been
settled in the first suit. Defendants refused. On July
9, 1998, the Circuit Court vacated the default judg-
ment and dismissed the action, 96 AR 1146, with
prejudice on *res judicata* grounds.

Plaintiff brings the current action seeking statutory
and actual damages, as well as costs and attorney's
fees, claiming that Defendants: 1) violated the Fair
Debt Collection Practices Act ("FDCPA") by
knowingly bringing the second lawsuit to obtain a
payment when none was due; and 2) violated the
Fair Credit Reporting Act ("FCRA") by refusing to
cooperate with consumer reporting agencies in
clearing up Plaintiff's credit history in accordance

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**EXHIBIT D**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22282523 (N.D.Ill.)

with the court dismissal orders.

*DISCUSSION*

I. *Standard of Review*

**\*2** Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Blakemore v. Pekay*, 895 F.Supp. 972, 976 (N.D.Ill.1995). The moving party has the burden of proving that the other side lacks evidence to support its position. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994); *SEC v. Randy*, 38 F.Supp.2d 657, 665 (N.D.Ill.1999). The burden then shifts to the opposing party to demonstrate that there is a genuine issue of material fact by setting forth specific facts. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986). In evaluating a summary judgment motion, the Court must draw all reasonable inferences in the light most favorable to the opposing party.*Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir.1994); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

When both parties file summary judgment motions, each side must show that the evidence is "so one-sided in their favor that there is no genuine issue requiring a trial, and they are entitled to summary judgments as a matter of law."*Blakemore*, 895 F.Supp. at 976. Only if the opposing side fails to show an essential element with respect to which she bears the burden of proof will the movant prevail. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986). The mere possibility of a factual dispute is not enough to defeat a summary judgment motion. *Waidridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994).

II. *Count I-The Fair Debt Collections Practices Act*

Plaintiff argues that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by instituting a second lawsuit for the collection of past due rent when the dismissal of the first suit had already settled the debt. Defendants contend that they were justified in filing the second lawsuit and that the FDCPA does not cover their conduct.

The FDCPA aims to prevent debt collectors from using abusive collection practices and from making false or misleading representations that result in the harassment of consumers. 15 U.S.C. § 1692; *Heintz v. Jenkins*, 514 U.S. 291, 293 (1995). A debt collector may not resort to any false, deceptive, or misleading means, such as threatening action that cannot legally be taken, in connection with the collection of any debt. 15 U.S.C. § 1692e(5). Nor may the collector use any false representations in an actual attempt to collect a debt. 15 U.S.C. § 1692e(10).

The Act defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."15 U.S.C. § 1692a(6). Significantly, the definition of "debt collector" does not include a person collecting its own debts or the debts of an entity which is "related by common ownership or affiliated by corporate control."15 U.S.C. § 1692a(6); § 1692a(6)(B).

**\*3** We find that Defendant Country Faire is not a "debt collector" as that term is defined in the Act. In determining whether defendant is a "debt collector," we are guided by the legislative purpose underlying the Fair Debt Collection Practices Act. The Senate Committee on Banking, Housing, and Urban Affairs Report reveals that Congress was primarily concerned with independent debt collectors, which "are the prime source of egregious collection practices."S. Report No. 95-382, at 2 (1977), reprinted in 1997 U.S.Code Cong. & Admin.News, pp. 1695, 1696. Indeed, unlike creditors who collect their

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22282523 (N.D.Ill.)

own debts, independent debt collectors "are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them."*Id.* Creditors and their affiliates, on the other hand, "generally are restrained by the desire to protect their good will when collecting past due accounts...."*Id.*Because Country Faire was attempting to collect its own debt, it is not a "debt collector" as that term is defined in the FDCPA. Therefore, summary judgment is granted in favor of Country Faire on Count I, the FDCPA claim.

Attorney Brebner is a "debt collector" because attorneys who engage in debt collection activity, including litigation, as their principal business or who regularly collect debts for other parties are "debt collectors" w ithin the meaning of the Act. *Heintz*, 514 U.S. at 299;*Blakemore*, 895 F.Supp. at 976. Because Brebner regularly collects debts for others, he is considered a "debt collector" for purposes of the Act. Therefore, Defendant Brebner is subject to the FDCPA.

Defendant Brebner does not dispute that the FDCPA applies to him. Instead, he contends that the statute does not specifically prohibit filing a lawsuit as a debt collecting method because this practice is not specifically listed as conduct which violates the FDCPA in 15 U.S.C. § 1692e. However, it is clear that the list of enumerated violations set out in § 1692e is not exhaustive of all possible practices that may violate the FDCPA. *See Tsenes v. Trans-Continental Credit and Collection Corp.*, 892 F.Supp. 461, 464 (E.D.N.Y.1995).

Defendant next argues that he did not misrepresent the debt because the second lawsuit requested money *in addition* to that requested in the first suit. The complaint in case No. 93 LM 764 prayed for judgment for the sum of $1,445 in back rent. However, as the evidence shows, the $3,179.16 asked for in the second suit included the $1,445 previously adjudicated. The Circuit Court of Lake County recognized this redundancy at Plaintiff's request, finding that the suit was barred on *res judicata* grounds because the dismissal order in the

first litigation eliminated Plaintiff's debt to Country Faire. Defendant misrepresented the status of the debt to the Circuit Court of Lake County in filing and prosecuting case 96 AR 1146.

Furthermore, a debt collector violates § 1692e(5) when he threatens "to take any action that cannot legally be taken."Defendant Brebner, as an attorney with a longstanding record in collections work, should have been aware of the fact that one cannot attempt to collect again on a debt that already has been resolved through legal action. He would not have been able to threaten Donley by promising to file a second lawsuit for money requested in suit 93 LM 764 after the resolution of that lawsuit. Nonetheless, Brebner took his collection activities a step further and actually brought a suit that could not legally be undertaken. If the *threat* of unlawful litigation violates the FDCPA, then certainly the filing of the lawsuit also violates the FDCPA.

*4 Finally, Defendant argues that, even if the second lawsuit was inappropriate, Plaintiff's only recourse would have been sanctions under the Illinois Supreme Court Rule 137, which provides measures for dealing with frivolous lawsuits. However, Plaintiff seeks recovery not for frivolous litigation but for abusive practices in debt collecting-a federal policy codified by the FDCPA. Defendant's reasoning would prevent any plaintiff from recovering under the federal law if the injury she suffered also happened to fall under a state law suitable for other criteria. We do not believe that to have been the intent of Congress.

Plaintiff has met her burden of producing evidence of Defendant's false and misleading statements in an attempt to collect on a debt. The FDCPA was violated by attempting to collect on a debt when no debt was owed. Defendant Brebner has put forth no evidence that would allow a reasonable jury to conclude that he did not use false and misleading representations when he failed to disclose information about a prior judgment to the Circuit Court when filing the second lawsuit. Nor has the Defendant produced any evidence of a dispute as to a material

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22282523 (N.D.Ill.)

Page 4

fact in this matter.

For the foregoing reasons, Plaintiff's motion for summary judgment as to Count I is granted against Defendant Brebner and denied against Defendant Country Faire. Defendant Country Faire's motion for summary judgment on Count I is granted.

### III. *Count II-The Fair Credit Reporting Act*

In this case, Plaintiff claims that Defendants violated the Fair Credit Reporting Act ("FCRA") by refusing to cooperate with credit reporting agencies in removing the outstanding debt to Country Faire from her credit history in accordance with the two dismissals in the Circuit Court of Lake County.

Congress enacted the FCRA in order to protect consumers from "inaccurate and arbitrary" reporting of information in their credit histories. *Vasquez-Garcia v. Trans Union de Puerto Rico, et al.,* 222 F.Supp.2d 150, 153 (D.P.R.2002); *see also Conley v. TRW Credit Data,* 381 F.Supp. 473 (N.D.Ill.1974). In 1996, Congress passed amendments to the FCRA which increased accountability on the part of those who furnish consumer information to credit reporting agencies. *See* Consumer Credit Reporting Reform Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009-448-49 (1996).

Sections 1681(n) and 1681(o) allow individual consumers to pursue a private cause of action under § 1681s-2(b) against "any person" who willfully or negligently fails to comply with the provisions of the FCRA. 15 U.S.C. §§ 1681(n), 1681(o).*See also Vasquez-Garcia,* 222 F.Supp.2d at 157 (Congress has expressly provided consumers with private cause of action for willful or negligent violation of § 1681s-2(b)); *Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 926-27 (N.D.Ill.2000) (individual consumers have private cause of action under § 1681s-2(b)); *DiMezza v. First USA Bank Inc.,* 103 F.Supp.2d 1296, 1300-1301 (D.N.M.2000); *Campbell v. Baldwin,* 90 F.Supp.2d 754 (E.D.Tex.2000). Failure to comply with these requirements of the

FCRA allows the individual consumer to sue whomever is responsible for providing the inaccurate information. *See DiMezza,* 103 F.Supp.2d at 1300.

*5 Section 1681s-2(b) of the Act, which provides a private cause of action for consumers against "furnishers of information," provides that:

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall-

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

Thus, the upshot of this section is that, upon notification of a dispute, a person who has furnished information to consumer reporting agencies must conduct an investigation of the information in dispute and provide the results of the investigation to the consumer reporting agency.

In this case, there is no dispute that Defendants are the "furnishers of information." The federal courts have defined that term as "an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax, MCCA, and Trans Union. *DiMezza,* 103 F.Supp.2d at 1299;*Vasquez-Garcia,* 222 F.Supp.2d at 154, n. 5. On page 6 of the Memorandum in Support of their Motion for Sum-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22282523 (N.D.Ill.)

mary Judgment, Defendants admit that they "supplied information to credit reporting agencies regarding Donley's individual debt."Thus, it is clear that Defendants are "furnishers of information" as that term is defined in the FCRA.

However, that is where the clarity ends. First, there is no evidence in the record as to whether the Defendants were formally notified of a dispute. Section 1681i(a)(1) provides that "[i]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate."Section 1681i(a)(2)(A) further provides that if "a consumer reporting agency receives notice of a dispute from any consumer in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute."

In this case, there is a dispute as to whether Plaintiff notified the consumer reporting agencies as to the discrepancy. In her affidavit, she states that she "has engaged both Trans Union and Equifax credit agencies to try and remove the wrongfully entered adverse judgment in case 96 AR 1146 from her credit history."Defendants claim that the consumer reporting agencies were not notified of the dispute. We have no written proof that the consumer reporting agencies were notified. Thus, a question of material fact exists as to whether the consumer reporting agencies were notified of the dispute.

*6 Likewise, there is no credible evidence that the consumer reporting agencies notified the Defendants that Plaintiff disputed an item on her credit report. Plaintiff very generally claims that "Defendants were aware generally that once the judgment was entered in 96 AR 1146, the credit reporting agencies became aware of that fact in the ordinary course of their business and placed that judgment on her credit history. By no later than January 6, 1997, the Defendants and each of them

were aware by viewing a credit report that the July 1, 1996 judgment in case No. 96 AR 1146 was being reported against the Plaintiff's credit by at least Trans Union Corp." Such general statements without further proof will not suffice to prove Plaintiff's case.

Finally, there is no evidence in the record as to whether Defendants conducted an investigation into the dispute and reported the results of the investigation to the consumer reporting agencies.

For these reasons, we find that numerous questions of material fact exist which prevent this Court from entering summary judgment in favor of either party. If the parties have evidence of the proof required to either prove, or disprove, that a violation of the FCRA occurred, they should bring it before the Court. Until then, the parties' cross motions for summary judgment on this claim are denied.

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion for summary judgment is granted on Count I, the Fair Debt Collections Practices Act claim against Defendant Brebner, and denied against Defendant Country Faire. Defendant Brebner's motion for summary judgment on Count I is denied, and Defendant Country Faire's motion for summary judgment on Count I is granted. The cross motions for summary judgment on Count II, the Fair Credit Reporting Act claims, are denied. This case is set for status on November 4, 2003 at 9:00 a.m.

It is so ordered.

N.D.Ill.,2003.
Donley v. Nordic Properties, Inc.
Not Reported in F.Supp.2d, 2003 WL 22282523 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Exhibit E

Westlaw.

Not Reported in F.Supp.2d                                              Page 1
Not Reported in F.Supp.2d, 2004 WL 783507 (N.D.Ill.)

**H**
Mnyofu v. Board of Educ. of School Dist. 227
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Komaa MNYOFU, on behalf of himself and
Shamari Jones, a minor, Plaintiff,
v.
BOARD OF EDUCATION OF SCHOOL DIS-
TRICT 227, et al., Defendants.
No. 03 C 8717.

Jan. 12, 2004.

Shamari Jones, CC Hills, IL, pro se.
Komaa Mnyofu, Country Club Hills, IL, pro se.

*MEMORANDUM OPINION*

GRADY, J.
**\*1** Before the court are plaintiff's motions for leave
to proceed *in forma pauperis* and for the appoint-
ment of counsel. For the reasons set forth below,
plaintiff's *in forma pauperis* motion is granted, and
his motion for appointment of counsel is denied.

*DISCUSSION*

Pursuant to 28 U.S.C. § 1915(a), we may authorize
plaintiff to proceed *in forma pauperis* if he demon-
strates an inability to pay the required court costs
and fees. In his affidavit, plaintiff states that he is
not currently working. He was last employed on
October 2, 2003 as a paralegal, and earned a salary
of $2,100 per month. He has received no other in-
come in the past year, he owns no property, and his
liquid assets (if any) do not exceed $200. Finally,
plaintiff has two daughters whom he lists as de-
pendents.

Notwithstanding plaintiff's recent employment, the
other factors, taken together (but particularly

plaintiff's obligation of supporting his dependents),
weigh in favor of finding that he has sufficiently
shown an inability to pay court costs.

Our *in forma pauperis* inquiry does not end there,
however. Under 28 U.S.C. § 1915(e)(2), we con-
duct an initial review of plaintiff's complaint and
dismiss the action if we determine that it: (i) is
frivolous or malicious, (ii) fails to state a claim
upon which relief may be granted, or (iii) seeks
damages from a defendant who is immune from
such relief.[FN1] Where, as here, we are reviewing a
complaint filed *pro se,* we are mindful of our spe-
cial responsibility to construe its allegations liber-
ally. *SeeDonald v. Cook County Sheriff's Dept.,* 95
F.3d 548, 555 (7th Cir.1996).

> FN1. As for the second question (failure to
> state a claim), we apply the same standard
> as we would for a motion to dismiss pursu-
> ant to Federal Rule of Civil Procedure
> 12(b)(6).*SeeZimmerman v. Tribble,* 226
> F.3d 568, 571 (7th Cir.2000).

Upon completing this review, district courts typic-
ally grant or deny leave to proceed *in forma pau-
peris* with respect to the complaint as a whole. That
is, if a district court finds even one potentially mer-
itorious claim, it may grant *in forma pauperis* status
as to all claims against all defendants. Nonetheless,
we may, in our discretion, carve out and dismiss
*sua sponte* any portions of the complaint which we
find do not satisfy the section 1915(e)(2)(B) cri-
terion. *SeeHouse v. Belford,* 956 F.2d 711, 718-19
(7th Cir.1992).

Turning then to the complaint before us, it appears,
at least on the face of it, that all of plaintiff's claims
are connected in some way (some more loosely
than others) to a dispute between him and his ex-
wife, Janice Taylor, over the custody of their minor
son, Shamari Jones. And, by this suit, plaintiff has
asserted claims against seemingly everyone he has
come into contact with through the course of this

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**EXHIBIT E**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 783507 (N.D.Ill.)

prolonged and ongoing dispute: nineteen individuals, including Cook County Circuit Court judges, Illinois Department of Children and Family Services ("DCFS") investigators and attorneys, Illinois Office of Public Guardian ("OPG") attorneys, Marriage & Family Counseling Center of Cook County ("MFCC") counselors, Rich Central Township High School (Jones' former high school located in Cook County, Illinois) District Board of Education ("school board") employees; Rich Central High School employees (including deans, principals, nurses and social workers), and private attorneys-both plaintiff's own former attorney and those representing Taylor; three institutions, namely, the school board, the DCFS, and Cook County, Illinois; and finally, "other unknown defendants."

*2 Construing the complaint charitably, we glean from it five claims, each brought pursuant to 42 U.S.C.1983 and asserted against all defendants: (i) a malicious prosecution conspiracy claim for filing false criminal domestic battery charges against plaintiff (on which plaintiff was ultimately found not guilty), (ii) a Fourteenth Amendment due process conspiracy claim for the deprivation of Jones' "right to a free and appropriate public education" by the transfer of Jones from one high school to another, (iii) a Fourteenth Amendment due process conspiracy claim for deprivation of plaintiff's liberty interest in the upbringing of his child; (iv) a First Amendment retaliation claim for defendants' retaliatory conduct in response to plaintiff's publicly questioning school board policies; and (v) claims for "kidnapping" and conspiracy under 18 U.S.C. 241 and 242 (for conduct roughly mirroring that alleged in the other conspiracy counts). In addition to the section 1983 claims, plaintiff asserts one supplemental jurisdiction state law claim for intentional infliction of emotional distress.

Even though we find it hypothetically possible (even if improbable) for plaintiff to prove facts entitling him to relief on at least one of his claims (and that is all a granting of *in forma pauperis* status requires), we will not allow plaintiff to proceed *in forma pauperis* on his *entire* complaint. See *Aiello v. Kingston,* 947 F.2d 834, 836 (7th Cir.1991) ("If the district court carves out of a case a claim that is frivolous or malicious, the choice between doing so before or after allowing the plaintiff to proceed *in forma pauperis* does not call for reversal."). For, in cases such as this, where many of the proffered claims suffer from obvious and fatal defects, we will attempt to spare prospective defendants the inconvenience and expense of responding to such claims that have no prospect of success.

First, it is clear that many of the defendants named in this action are immune from suit. Judges are entitled to absolute immunity from section 1983 suits involving actions taken in their judicial capacity. See *Stump v. Sparkman,* 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)."A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."*Id.* at 356 (citation omitted). Because plaintiff's allegations are limited to acts performed by judges in their judicial capacities, *i.e.,* adverse rulings, the judges are immune.

Absolute immunity is likewise applicable to all defendants named from the DCFS, OPG and MFCC offices. Government agency officials performing functions analogous to those of a prosecutor are entitled to immunity with respect to those functions, including child service workers who initiate and prosecute proceedings for protective orders. See *Potts v. O'Malley,* 1995 WL 745960, at *3 (N.D.Ill.Dec.1, 1995). Since the allegations against these agency personnel are limited to conduct taken as part of their investigative roles or incident to judicial proceedings, the challenged conduct falls within the scope of their prosecutorial immunities.

*3 In addition to immunities, the jurisdictional limitations of section 1983 itself require a further scaling back of plaintiff's complaint. Generally, in order to violate section 1983, the defendant must be a

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 783507 (N.D.Ill.)

state actor. See Fries v. Helsper, 146 F.3d 452, 457 (7th Cir.1998). Neither Taylor nor any of the private attorneys named as defendants-Allan Feingold, Sandra Crawford and Ronald Samuels-are state actors. Section 1983 liability *may* be established against private actors, but only if a plaintiff can show a conspiracy between them and persons who are state actors. See Briscoe v. LaHue, 460 U.S. 325, 330, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). To demonstrate a section 1983 conspiracy, a plaintiff must prove that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, ... and (2) those individual(s) were willful participants in joint activity with the State or its agents." Fries, 146 F.3d at 457 (citations and internal quotations omitted).

Although plaintiff does make allegations of a conspiracy, those averments amount to nothing more than inserting "conspired to" before verbs describing defendants' conduct. Absent any *factual* allegations necessary to find the existence of a conspiracy, plaintiff's allegations are merely unsupported *legal* conclusions. And while we must accept as true all of plaintiff's factual allegations, the same does not hold true for conclusions of law. Thus, because Taylor, Feingold, Crawford and Samuels are not state actors, and because plaintiff has not met his burden of pleading a section 1983 conspiracy, all claims against these defendants are dismissed.

In addition to immune and improper defendants, the complaint is larded with *claims* that are easily rejected. First, plaintiff may not maintain a section 1983 claim for malicious prosecution because of the availability of a parallel state-law remedy. Put simply, the existence of a tort of malicious prosecution in Illinois "knocks out" any constitutional tort under due process for the same conduct. See Newsome v. McCabe, 256 F.3d 741, 751 (7th Cir.2001). Second, plaintiff's claim that the removal of Jones from Rich Central High School to Thornton Fractional North High School (another high school in Cook County, Illinois) violated his and Jones's Fourteenth Amendment due process rights is not

tenable. While Illinois law guarantees a free and appropriate public education generally, plaintiffs have no constitutionally cognizable property or liberty interest in attending the individual school of plaintiff's or Jones's choice. If defendants had denied Jones access to any free public education, that would be a different matter. But, without a constitutionally recognized property or liberty interest, there is no need for further inquiry on the due process question. See, e.g., Paul v. Davis, 424 U.S. 693, 711-12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Finally, plaintiffs' actions for "kidnapping" and conspiracy pursuant to 18 U.S.C. 241 and 242 are claims sounding in criminal law and are not properly before this court in a civil proceeding.

*4 This leaves us then with three claims-a Fourteenth Amendment due process conspiracy claim for deprivation of plaintiff's liberty interest in the upbringing of his child, a First Amendment retaliation claim for defendants' retaliatory conduct in response to plaintiff's publicly questioning school board policies, and an intentional infliction of emotional distress claim under Illinois law-against nine parties, Cook County, the school board, the school board employees, and the Rich Central High School employees. We emphasize that by allowing plaintiff to proceed *in forma pauperis* on these claims, we intend no comment on their ultimate viability, or even whether they would survive a motion to dismiss. We simply believe that an evaluation of these facially colorable claims would be premature absent the benefit of responsive pleadings.

We turn now to plaintiff's motion for appointment of counsel. Civil litigants have no constitutional or statutory right to be represented by counsel in federal court. See Forbes v. Edgar, 112 F.3d 262, 264 (7th Cir.1997). District courts may, in their discretion, appoint counsel pursuant to 28 U.S.C. § 1915(e). In evaluating a litigant's request for counsel, there is a threshold requirement that he make a reasonable effort to secure counsel before presenting a request for appointment. See Jackson v. County of McLean, 953 F.2d 1070, 1072-73 (7th

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 783507 (N.D.Ill.)

Page 4

Cir.1992). Having shown unsuccessful attempts to retain counsel from at least four public legal aid clinics, plaintiff has met his burden on this front. Next, we ask: given the difficulty of the case, does the plaintiff appear competent to try the case himself and, if not, would appointment of counsel make any difference to the outcome? *See Farmer v. Haas,* 990 F.2d 319, 322 (7th Cir.1993). At this early stage, we cannot say that plaintiff has shown a potentially meritorious claim. We therefore deny plaintiff's motion for appointment of counsel without prejudice to renewal following defendants' filing of responsive pleadings so the court can then make a proper determination whether appointed counsel is necessary.

### CONCLUSION

The court grants plaintiff's motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). The court dismisses *sua sponte* all claims against the state court judges, DCFS, and all DCFS, OPG and MFCC employees pursuant to 28 U.S.C. § 1915(e)(2). The court also dismisses *sua sponte* the plaintiff's malicious prosecution, "free and appropriate public education," "kidnapping," and criminal conspiracy claims against the remaining defendants, again pursuant to 28 U.S.C. § 1915(e)(2). The court denies plaintiff's motion for appointment of counsel without prejudice. Plaintiff may have until January 23, 2004 to file an amended complaint consistent with this opinion.

N.D.Ill.,2004.
Mnyofu v. Board of Educ. of School Dist. 227
Not Reported in F.Supp.2d, 2004 WL 783507 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Exhibit F

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 123796 (N.D.Ill.), 20 NDLR P 49

**H**

Radivojevic v. Granville Terrace Mut. Ownership Trust
N.D.Ill.,2001.

United States District Court, N.D. Illinois, Eastern Division.
Bratislav M. RADIVOJEVIC, Plaintiff,
v.
THE GRANVILLE TERRACE MUTUAL OWNERSHIP TRUST, and Loretta C. Corfman, Chairperson of the Granville Terrace Mutual Ownership Trust, et al., Defendants.
**No. 00 C 3090.**

Jan. 31, 2001.

Bratislav M. Radivojevic, Chicago, Pro Se Plaintiff.
Barry E. Morgen, Esq., Morgen & Perl, Lincolnwood, for Defendants.

MEMORANDUM OPINION AND ORDER

ASHMAN, Magistrate J.
**\*1** Defendants, the Granville Terrace Mutual Ownership Trust ("Granville Trust") and Loretta Corfman, Chairperson of the Granville Trust, move to bring this litigation to a close pursuant to Federal Rule of Civil Procedure 12(b)(6). On September 27, 2000, this Court dismissed Plaintiff Radivojevic's claim under 42 U.S.C. §§ 3601-31, the Fair Housing Act, because the statute of limitations had run. For the reasons that follow, the remaining claims against Defendants are also dismissed.[FN1]

> FN1. The parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(b).

I. *Background*

As discussed more fully in *Radivojevic v. Granville Terrace Mutual Ownership Trust*, No. 00 C 3090,

2000 WL 1433999 (N.D.Ill. Sept.27, 2000), this case involves the purchase of shares of Defendant Granville Trust, a cooperative apartment building, located in Chicago, Illinois. On February 25, 1997, Plaintiff, Plaintiff's daughter, and McKillip, an owner of shares of Defendant Granville Trust, entered into a Contract for Sale of Shares of Cooperative Apartment. The sale, however, was subject to approval by Defendant Granville Trust.

As it turns out, on May 14, 1997, Defendant Corfman informed Plaintiff that Defendant Granville Trust would not approve the sale. Defendant Corfman claimed that the decision was based on Plaintiff's financial situation. Plaintiff, on the other hand, believed that Defendants rejected the sale because Plaintiff suffered from a disability. Several proceedings, including this one, ensued.

II. *Discussion*

A. Standard of Review

This Court, once again, tests Plaintiff's complaint under Rule 12(b)(6). The purpose of Rule 12(b)(6) is to evaluate the sufficiency of the complaint in stating a claim upon which relief can be granted. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In ruling on a motion to dismiss, the court presumes that the well-pleaded allegations of the complaint are true and draws all reasonable inferences in favor of the plaintiff. *See Warth v. Seldin,* 422 U.S. 490, 501 (1975); *Jenkins v. McKeithen,* 395 U.S. 411, 421-22 (1969).

While federal notice pleading permits a generous reading of the complaint to withstand a motion to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**EXHIBIT F**

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 123796 (N.D.Ill.), 20 NDLR P 49

dismiss, the complaint must at least set forth sufficient facts to " 'outline or adumbrate' " the basis of the claim. *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 792 (7th Cir.1996). The plaintiff "will not be allowed to evade this requirement by attaching a bare legal conclusion to the facts that he narrates."*Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir.1984).

Lastly, this Court is mindful of the additional considerations that apply in cases such as this-where the plaintiff appears *pro se.*A *pro se* plaintiff's pleadings are construed more liberally, and the court should find that the *pro se* plaintiff's complaint states a valid claim for relief despite the plaintiff's failure to cite proper legal authority or the plaintiff's unfamiliarity with pleading requirements. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 )10th Cir.1991). Nevertheless, the pro se plaintiff must allege sufficient facts on which a recognized legal claim could be based. *See Young v. Breeding*, 929 F.Supp. 1103, 1106 (N.D.Ill.1996). The court will not "assume the role of advocate for the pro se [plaintiff]."*Hall*, 935 F.2d at 1110.

B. Fourteenth Amendment

This Court's analysis begins with Plaintiff's assertion that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment by not consenting to the sale of shares. To bring a claim under the Equal Protection Clause, the plaintiff must present evidence of "state action," rather than purely private action. *See Gilmore v. City of Montgomery*, 417 U.S. 556, 565 (1974); *Sherman v. Cmty. Consol. Sch. Dist. 21,* 8 F.3d 1160, 1167-69 (7th Cir. 1993). State action is action that may be "fairly treated as that of the State itself."*Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). This, of course, includes actions taken by a state's executive, legislative, judicial, and administrative offices. *See, e.g., Hernandez v. Texas,* 347 U.S. 475, 477 91954). Additionally, this includes actions taken by private parties, but only where the action derives "from the exercise of a

right or privilege having its source in state authority" and where the private party engaging in the action can be "described in all fairness as a state actor."*Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991). In making this determination, the court considers "the extent to which the actor relies on governmental assistance and benefits,""whether the actor is performing a traditional governmental function," and "whether the injury caused is aggravated in a unique way by the incidents of governmental authority."*Id.* at 621-22.

Plaintiff's complaint and response memorandum are wholly devoid of any allegations demonstrating the existence of state action. Nothing shows that Defendants' rejection of the sales contract derived "from the exercise of a right or privilege having its source in state authority" or that Defendants can be "described in all fairness as state actors."Instead, the complaint only adumbrates the existence of a purely private dispute, involving purely private actors. Under these circumstances, the Equal Protection Clause of the Fourteenth Amendment cannot provide a basis for any cause of action by Plaintiff.

C. Claims Under §§ 1981-82

*2 Plaintiff also has not set forth sufficient facts to outline the basis of a claim under either § 1981 or § 1982. Congress enacted 42 U.S.C. §§ 1981-82 to provide for equality between persons of different races. *See Schroeder v. Illinois*, 354 F.2d 561, 562 (7th Cir.1965); *Agnew v. City of Compton*, 239 F.2d 226, 230 (9th Cir.1956). Accordingly, to establish a claim under § 1981, a plaintiff must allege that he is a member of a racial minority, that the defendant intentionally discriminated against the plaintiff on the basis of race, and that the discrimination related to the activities enumerated in the statute.[FN2]*See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). And, to establish a claim under § 1982, a plaintiff must demonstrate that the defendant intentionally discriminated against the plaintiff on the basis of race in the sale or rental of property. *See Jones v. Alfred H. Mayer*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 123796 (N.D.Ill.), 20 NDLR P 49

*Co.,* 392 U.S. 409, 421-22, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); *Asbury v. Brougham,* 866 F.2d 1276, 1279 (10th Cir.1989).

> FN2. Such activities include making and enforcing contracts, suing, giving evidence in court, etc. *See* 42 U.S.C. § 1981(a).

This case, however, involves an allegation of disability discrimination not racial discrimination. Nowhere in the documents filed with this Court does Plaintiff ever present a single allegation of racial discrimination. (*See* Pl.'s V. Compl. at 1-2, 4, 7-8, 12-14; Pl.'s Resp. Defs.' Mot. Dismiss at 6, 8, 10, 12.) In fact, Plaintiff never even mentions the word "race." *See Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998) (suggesting that " 'I was turned down for a job because of my race' " is all a Title VII plaintiff has to say to withstand an attack pursuant to Rule 12(b)(6)). Hence, the protection that §§ 1981-82 afford is not the protection sought here. Plaintiff's claims under §§ 1981-82 are dismissed.

### D. Section 1983

The basis for dismissing Plaintiff's Fourteenth Amendment claim equally applies to Plaintiff's § 1983 claim. Section 1983 deters state actors from abusing their power and depriving others of their civil rights under color of state law. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 258, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). "Under color of state law" means pretense of law; it involves a "misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with ... [state] authority." *Atkins v. Lanning,* 415 F.Supp. 186, 188 (N.D.Okla.1976). Thus, "purely private action ... discriminatory or not, is not prohibited by Section 1983." *Bailey v. Boilermakers Local 667,* 480 F.Supp. 274, 279 (N.D.W.Va.1979).

As mentioned above, the pleadings indicate that this case involves a purely private dispute between two purely private actors. Any power that the De-

fendants possessed derived from status as owner of private property or as elected board member of a private entity. Neither fact can provide a basis for Plaintiff's action under § 1983.

### E. Section 1985(3)

Plaintiff's § 1985(3) claim is wanting as well. Section 1985(3) creates a cause of action against persons who conspire to deprive classes of persons of their federally protected rights. *See Cohen v. Ill. Inst. of Tech.,* 524 F.2d 818, 827-29 (7th Cir.1975). The statute itself creates no substantive rights. Thus, for purposes of a Rule 12(b)(6) motion, the court must look at both § 1985(3) claim exists. *See Cohen,* 524 F.2d at 827-29. For instance, where the Fourteenth Amendment provides the basis of a § 1985(3) claim, a showing of state action is required. *See id.* at 828.But where the Thirteenth Amendment or the right to travel, for example, serves as the basis of a § 1985(3) claim, no such showing of state action is required. *See id.*

*\*3* The elements of the § 1985(3) claim itself are as follows: a conspiracy; an intent to deprive an individual, or class of individuals, of the equal protection of the laws; an act in furtherance of the conspiracy; and an injury or deprivation of a right. *See Trautvetter v. Quick,* 916 F.2d 1140, 1153 (7th Cir.1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 591 (7th Cir. 1989)). In *Griffin v. Breckenridge,* the Supreme Court held that "racial, or perhaps [some other] class-based invidiously discriminatory animus" must serve as the basis of the conspirators' actions. 403 U.S. 88, 102 (1971). Besides race, classes recognized as supporting a § 1985(3) claim include those based on ethnic origin, sex, religion, and political loyalty. *See D'Amato v. Wis. Gas Co.,* 760 F.2d 1474, 1486 (7th Cir.1985); *Askew v. Bloemker,* 548 F.2d 673, 678 (7th Cir.1976); *Murphy v. Mt. Carmel High Sch.,* 543 F.2d 1189, 1192 n. 1 (7th Cir.1976). To the contrary, the Seventh Circuit held that disabled persons do not constitute such a protected class. *See D'Amato,* 760 F.2d at 1485-87. *But see Trautz v.*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 123796 (N.D.Ill.), 20 NDLR P 49

*Weisman,* 819 F.Supp. 282, 290-95 (S.D.N.Y.1993) (finding that a class of disabled persons may be protected under § 1985(3)).

Here, a careful review of Plaintiff's complaint only reveals a possible § 1985(3) claim based on the Fourteenth Amendment for disability discrimination. As explained above, this means that Plaintiff would need to allege state action. Plaintiff, however, has not alleged any state action. *See supra* Pts. B & D. Thus, the § 1985(3) claim must be dismissed.

Additionally, Plaintiff's § 1985(3) claim must also be dismissed because disabled persons are not a protected class under § 1985(3).*See D'Amato,* 760 F.2d at 1485-87. Furthermore, even assuming that disabled persons could constitute a protected class for purposes of § 1985(3), and that Plaintiff alleged state action, Plaintiff's claim would still be dismissed because he has failed to adumbrate any facts showing that Defendants discriminated against disabled persons other than him. (*See* Pl.'s V. Compl. at 2, 7, 12, 13-14.) After all, § 1985(3) requires class-based discrimination. *See Silkwood v. Kerr-McGee Corp.,* 637 F.2d 743, 748 (10th Cir.1980) ("To state a cause of action under section 1985(3) the law requires prejudice against a class qua class."); *Maidman v. Regent House Tenants Corp.,* No. 84 Civ. 6252(RWS), 1984 WL 1307, at *3 (S.D.N.Y. Dec.5, 1984) (dismissing § 1985(3) claim because plaintiff "failed to present any evidence of a discriminatory animus on the part of [defendant] directed towards the aged or senile other than the action directed [at] her").

**F. Americans With Disabilities Act**

Finally, Plaintiff's claim under the Americans with Disabilities Act must be dismissed. The ADA prohibits discrimination against disabled persons by persons who own or operate places of public accommodation.[FN3]*See*42 U.S.C. § 12182(a). A place of public accommodation includes an inn, hotel, motel, or "other place of lodging." *Id.* §

12181(7)(A).

> FN3. Although Plaintiff never alleges that Defendants' cooperative apartment is a place of public accommodation, this appears to be the only basis of ADA cover- age.

"[O]ther place of lodging" is not defined in the statute, but the legislative history of the ADA clarifies that "other place of lodging" does not include any residential facility. *See*H.R.Rep. No. 101-485(II), at 100 (1990).[FN4] That being said, apartments and condominiums are not places of public accommodation. *See Hanks v. Tilley,* No. 1:98CV00789, 1999 WL 1068484, at *2 (M.D.N.C. Feb.2, 1999); *Indep. Hous. Servs. v. Fillmore Ctr. Assocs.,* 840 F.Supp. 1328, 1344 & n. 14 (N.D.Cal.1993). And the cooperative apartment in issue, just like the residences in *Hanks* and *Fillmore,* is not a place of public accommodation. Consequently, Plaintiff has no claim under the ADA.

> FN4. As stated in the House Report:
>
> > Only nonresidential facilities are covered by this title. For example, in a large hotel that has a residential apartment wing, the residential wing would be covered under the Fair Housing Act, rather than by this title. The nonresidential accommodations in the rest of the hotel would be covered by this title.
>
> H.R.Rep. No. 101-485(II), at 100.

### III. *Conclusion*

*4 Since May 1997, Plaintiff's pursuit of shares of Defendant Granville Trust has taken a number of disappointing turns, both in and out of court. Certainly, Plaintiff's hodgepodge complaint brings to light the intense frustration that Plaintiff has experienced because of these events. Nonetheless, even after investing much time to parse through Plaintiff's complaint, we are convinced that Plaintiff has failed to outline any facts to show that

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 123796 (N.D.Ill.), 20 NDLR P 49

he is entitled to relief under the Equal Protection Clause of the Fourteenth Amendment or any of the statutes cited herein.

Thus, for the reasons stated, this Court grants Defendants' motion to dismiss. Plaintiff's claim under § 1988(b) for attorney's fees is dismissed because Plaintiff is not the prevailing party.

N.D.Ill.,2001.
Radivojevic v. Granville Terrace Mut. Ownership Trust
Not Reported in F.Supp.2d, 2001 WL 123796 (N.D.Ill.), 20 NDLR P 49

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.