**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| YAODI HU | ) | |
| | ) | |
| Plaintiffs | ) | |
| vs | ) | |
| | ) | case No.  08 CV 2007 |
| Honorable Timothy C. Evans Chief Judge | ) | |
| Of Circuit Court of Cook County Illinois | ) | Honorable Amy Eve |
| Honorable Pamela Hill Veal, Judge | ) | |
| Honorable  Sheryl Pethers , Judge | ) | jury demand |
| All in their  Official capacity | ) | |
| | ) | |
| Walinski & Trunkett, PC. | ) | |
| Brian Lewis, John Buscher, | ) | |
| Robert Walinski, Park National Bank | ) | |
| Allen Meyer, | ) | |

# Response to Park National Bank's Motion to Dismiss

## Brief Discussion of Hu's 12 law suits filed:

1.   First law suit is  Bell v. Martinez.  06-cv- 5809.   The State of Illinois imposed mandatory counseling targeting only those buyers of properties located in ten zip codes where minorities are majority buyers.   The law was commonly known as "HB-4050".   The law obviously offended the Equal Protection clause.   The law was effective from September 1, 2006.   December 14, 2006,  Hu, acting pro se filed his 68 pages Amended Complaint against the governor and other defendants.   In about a month,  on January 19, 2007,  the law was suspended by the Governor invoking statutory authority under the Act.   The case is currently under appeal. 07-3607.   Hu is the only appellant and filed his appellate reply brief very recently.

2.  The second law suit is  Hu v. Cantwell  06-cv- 6589.   One of the defendants  settled with Hu.   Hu was involved in a real estate transaction and inspection was refused and deal did not close.  The earnest money was not returned.  Hu was compelled to file law suit.   Recently,  Hu's wife received returned earnest money as part of settlement.

3.  The third law suit is Hu v. Park National Bank.  07 cv 0844.   It is worth noting, Park national is the cause of two of Hu's federal actions.  What is disturbing is that Park National Bank intentionally misrepresents the facts to this court regarding the underlying cause of action. Hu deposited Postal Money Orders of Five thousand dollars in Park National Bank.   Hu waited more than two weeks for them to be cleared. During that period, Park assured Hu at least twice that those Postal Money Orders were cleared. (meaning they were honored by U.S. Postal Office).  When second time Hu received money orders, because of the circumstances, Hu took them to the Postal Office to be examined to see if they were counterfeit.   Originally the clerk assured Hu that they were o.k.   Hu insisted upon seeing the Postal Master, to have those Postal money order professionally examined.  Hu's effort paid off.   Those second batch of postal money order turned out to be counterfeit.   Hu's good effort brought him consequences.   The postal Master insisted that the first batch of money orders of five thousand dollars had to be also counterfeit.   The following day,  Hu's bank account was seized without warrant, court order.   The postal master never bothered to do any investigation.   After two litigation, two discovery, one trial and two years,  Park National Bank has yet to identify one single witness, one admissible evidence to prove that the first batch of Postal Money Orders were counterfeit.   They have NONE.   It is important to point out, when Postal Office,  and Park National Bank,  possessing those original "counterfeit" Postal money orders, and all the information regarding the finding and determination of those counterfeit,  the failure of them producing those evidence, "an inference or presumption is raised that the evidence, if produced, would be unfavorable to his cause." ***Great Western R. Co. v. Bacon***, 30 Ill.347. see also ***Cartier v. Troy Lumber Co.,***  138 Ill.533, 28 N.E. 932;  ***Mammoth Oil Co. v. United States***, 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed. 137.) ***Shumak v. Shumak*** 30 Ill.App.3d 188, 190-91,  332 N.E.2d 177 (2nd Dist. 1975). See also ***Lam v. Northern Illinois Gas***

**_Company_**, 449 N.E.2d 1007, 114 Ill.App.3d 325, 70 Ill.Dec. 660 (1st. Dist 1983)(under the best evidence rule, only the production of original counterfeit money would support Park National Bank's allegation of counterfeit. They inexplicably failed to do so. The obvious conclusion is that Park National Bank and the United States Postal Office are hiding the truth and those Postal Money Orders are NOT counterfeit.) Park National Bank prevailed on the summary judgment because of Local Rule 56.1. The case is under appeal. It is worth noting, that in discovery, Park did not produce any documents, any evidence. Park did not even make any initial Rule 26 disclosure.

4. The fourth case is Hu v. Huey 07 cv 3822. Hu's commercial landlord decided to evict Hu because Hu's wife prepares tax return in their office. The eviction was to enforce an restrictive covenant that no body can prepare tax return competing with the only accountant in the building. Those restrictive covenant is per se violative of Sherman Act. At the minimum, it is against rule of reason. There is no compensating factor rendering this restrictive covenant pro competition. But the Court ruled that there was no interstate commerce, although Hu clearly stated electronic filing, which intimates that the transaction crosses the state line. Honorable Kendall criticized Hu being abusive in filing. Hu filed four motions for injunctive relieves. Hu's motions were all denied, partly because the Court thought there was no irreparable harm and HU did not meet the standard for granting preliminary injunctions. Regarding the standard for granting preliminary injunctions, Honorable Posner acknowledged in **_Roland Machinery Co. v. Dresser Industries, Inc_**. 749 F.2d 380 (C.A. 7 (Ill.), 1984) that "Each party is able to cite numerous decisions in support of its view of the proper standard, simply because the relevant case law is in disarray in both this and other circuits." **_Id_** at 382. The first time Hu filed his Motion for injunctive relief, the Court said that it was unwilling to hear it because it needs to consider jurisdictional issue first and it would deal with the Motion to dismiss first. After Hu responded to Motion to dismiss, Hu thought that the Court might be willing to consider Hu's Motion for injunctive relief, so Hu filed the second time. Hu filed the third time, because defendant Huey obtained possession order and Hu thought that changed situation could be irreparable harm. Case laws indicated that being threatened of dispossessing one's commercial premises is considered irreparable harm. The fourth time Hu filed Motion

for reconsideration.   Hu introduced new evidence.   Hu's business also involved mortgage lending and real estate activities, which is considered to have substantial impact on interstate commerce.   Hu's motion for injunctive relief was denied because the Court also thought there was no federal jurisdiction. (no interstate commerce).   Hu introduced new evidences under Rule 59 (e).    The Court could be correct and it does have broad discretion in denying  Hu's injunctive relief.  But to label Hu as being abusive is not fair to Hu.   The case is under appeal.

5.  The fifth case is Hu v. Midlothian.  07 cv 3748.    Hu owns a commercial property in Midlothian.  For the past several years, Hu failed to get his business license to open his business Midlothian.    Hu brought action under first amendment and other cause of action. The Court recently granted Hu's Rule 15 (a) Motion to amend, after his several try.   In Hu's amended complaint, Hu challenged the facial constitutionality of several village ordinances.  The Court did not label Hu as abusive for multiple try.   (Granted, Hu still lacks enough experiences and legal knowledge to be an effective litigant.  Hu did make some mistakes in litigation.  But who does not?  To equate inexperience and lack of knowledge with abuse is quite unbelievable.)

6.  The six case is Hu v. Mann.   Hu did not prosecute his case because conflict no longer existed after his filing of law suit.

7.  The seventh case is Hu v. Pearl River Piano.  08 cv 1032.    Hu was a piano dealer for Pearl River Piano several years ago.  Pearl River awarded exclusive distribute right to another dealer and terminated its relationship with Hu.   Hu brought action under Sherman act.    Settlement is a possibility.

8.  The eighth case is Hu v. American Bar Association. 08 cv. 1033.   Hu went to Kent College of law for about two years.  Hu brought action trying to have his past credit honored.   The case is under appeal.   The Court ruled that ABA is not a state actor.

9.  The nine case is Hu v. Maywood.   07 cv 7203.   Hu's two vehicles parked upon his private property were towed.    And Hu owned a commercial property in Maywood.

Hu could not get business license in the past several years.   Hu brought suit against

Maywood under many cause of actions.   The case still pending in district.

10. The tenth case is Hu v. La Auto Body.  08 cv 3825.   Hu's vehicle was at the shop of La

Auto Body for two years.   Hu brought action under section 1981.   The case was

dismissed and Hu plan to amend his complaint.

11. The eleventh case is Hu v. City of Chicago.  08 cv 839.   Hu's two vehicles were towed.

The city of Chicago still possessed Hu's two vehicles.   Hu's motion for preliminary

injunction was denied and Hu appealed.

12. The twlece case is Hu v. City of Chicago and Mayflower Food. 08 cv 4108.

Mayflower Food caused Hu to be arrested about three years ago.  Hu attempted to buy

some fish.  Hu's credit card tender was rejected because Hu did not carry his ID.   The

store insisted upon Hu going home to get cash and Hu refused.  Hu was arrested.   Hu

has a property in Chicago, and the city inspector stopped Hu's repair without due

process even though Hu has building permit.   The property has been vacant since for

about two years.

13.  Hu  does not bring  federal action whenever there is constitutional violation.   Every

case Hu brought,  Hu has substantial economic interests at stake.  Except the case 08 cv

839, where Hu could have paid off all ticket and avoid conflict.    On the other hand,

Hu has been in Chicago for about 18 years and his vehicles have been towed many

times.  Hu felt that many parts of the Chicago ordinance authorizing the tow are

constitutionally challengeable.

14. Hu has been in businesses of different kinds and Hu did not pursue litigation in the past

when his legal right was infringed upon by others and his economic interests were

substantially injured.   Now that Hu brings action to vindicate his Constitutional right and property right precisely reflect the fact that America is a country of rule of law.   Hu is not living in China, where most of his grievances might not have a remote chance of getting legal remedy.   Trying to demonize Hu for his effort to vindicate his legal right is preposterous.

15. It is worth noting, that out of 12 cases, eight of them are section 1983 actions involved either facial challenge to ordinances and law of the states, or the challenge of the governmental actions   Local and state governments are certainly free to enact ever more of those unconstitutional ordinance and laws,  Hu will challenge those laws, if those law affect his legal right, especially if it substantially affect his economic interests.   Hu is fortunate enough living in U.S. with its Constitutional democracy predicated upon ***Marbury v. Madison***.   Hu's actions in Federal courts are certainly not without frustrations.  But Hu keeps his faith in the system.   Out of those 12 cases,  five of them are under appeal in Seventh Circuit.

# Argument:

## A.  Unpublished Opinion is without Precedent Value

16. Park National Bank cited unpublished cases of  *Donley v. Nordic Properties, Inc., No*. 99 C 4677, 2003 WL 22282523, * 2 (N.D. Ill. Sept. 30, 2003),  *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc*., No. 07-1567, 2008 WL 2941171, *2 (7th Cir. August 1, 2008);  Mnyofu v. Board of Education of School District 227, No. 03 C 8717, 2004 WL 783507, *3 (N.D. Ill.Jan. 12, 2004);  Radivojevic v. The Granville Terrace Mutual Ownership Trust, No. 00 C 3090, 2001 WL 123796, *1 (N.D.Ill.Jan. 31, 2001).

17. Unpublished decisions generally have no precedential value in Seventh Circuit.  ***U.S. v. Gajdik*** 292 F.3d. 555, 560 (7th Cir. 2002).    See also prior Circuit Rule 53 (b)(2)(iv).

18. Other circuits have the similar rule.  The very reason a decision is not published is because it has no precedent value. "The panel decided not to publish its opinion. See generally 11th Cir. R. 36-2 ("An opinion shall be unpublished unless a majority of the panel decides to publish it."); 11th Cir. I.O.P. 36-5 ("Opinions that the panel believes to have no precedential value are not published.")."  ***Riley v. Camp***, 130 F.3d 958, note 5 (C.A. 11 (Ga.), 1997)

19. "Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well." See ***Seals v. Division of Youth Services***, 91 F.3d 149 (C.A. 8 (Mo.), 1996)

20. Our 7th Circuit Rule 32.1 (d) states " No order of this court issued before January 1, 2007, may be cited except to support a claim of preclusion (res judicata or collateral estoppel) or to establish the law of the case from an earlier appeal in the same proceeding"    Rule 32.1 (b) states that "Order, which are unsigned, are released in photocopied form, are not published in the Federal Reporter, and are not treated as precedents."   See ***In re City of Chicago***, 500 F.3d 582 (7th Cir. 2007). ("order was non-precedential under Circuit Rule 32.1")

21. Therefore, Park National Bank's  heavy reliance upon those unpublished decisions are misplaced.

## B.  Park is a Debt Collector as Defined by the FDCPA

22. Because Park cited unpublished opinion (with no precedent value) trying to support its position.   Park's position is untenable.     Without *Donley v. Nordic Properties, Inc., No*. 99 C 4677, 2003 WL 22282523, * 2 (N.D. Ill. Sept. 30, 2003),  Park has no proper authority to support its position.

23. Park's argument that it is not a debt collector as defined by the FDCPA is waived when Park fails to cite legal authority to support it.  See ***Estate of Moreland v. Dieter,*** 395 F.3d 747, 759 (7th Cir. 2005).  ***Brandt v. Board of Educ. Of City of Chicago***, 420 F.Supp.2d 921, n 5,  (N.D. Ill., 2006),  ***Schmude v. Sheahan***, 312 F.Supp.2d 1047, 1081  (N.D. Ill. 2004) (The failure to develop an argument results in that argument being waived.),   ***United States v. Jones***, 224 F.3d 621 (7th Cir. 2000)(stating  that arguments that are not adequately developed or supported are waived).

24.  Substantively,  Park's argument is also without merit.

25. ***15 U.S.C. § 1692 a (6)*** defined "debt collector" as  "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

26. There are two prongs to the definition of the statute.  First prong is "principle purpose". The second prong of the statute is "regularly collects".   See ***Oppong v. First Union Mortgage Corporation*** 407 F.Supp.2d 658, 662 (E.D. Penn. 2005).  *Donley v. Nordic Properties, Inc., No*. 99 C 4677, 2003 WL 22282523, * 2 (N.D. Ill. Sept. 30, 2003) only dealt with the first prong of the statute.   An apartment owner's principle purpose

is certainly not collecting debt.  But the case is silent as to whether the apartment owner regularly collects debt due to itself.

27. Even if Park's principle purpose is not debt collection, there is still material issue as to whether it regularly collects debt due to itself.  In fact,  Park does regularly collect debt on behalf itself.   In plaintiff's case,  Park sent letters to Hu trying to collect the debt.  Park called Hu trying to collect the debt.

28. Even if _Donley v. Nordic Properties, Inc., No_. 99 C 4677, 2003 WL 22282523, * 2 (N.D. Ill. Sept. 30, 2003) is a published case,  it still does not support Park's position that it is not a debt collect as defined by FDCPA,  because Park could be a debt collector under the second prong of the statute, collecting debt regularly.

29. "The definition of 'regular' within the meaning of the FDCPA is a novel issue in the Third Circuit.  Regular is defined in the dictionary as 'orderly, methodical, recurring, attending, or functioning at fixed or uniform intervals.'  Webster's Ninth New Collegiate Dictionary 992 (1990).   Under this definition, there are two distinct meanings of 'regular' that could apply the term 'debt collector' under the FDCPA: (1) 'regular' could refer to the frequency and consistency of debt collection activities ('the frequency approach'); (2) 'regular could refer to the proportion of debt collection activity in relation to all business activities performed by the party at issue ('the aggregate approach').   The courts are split as to the correct approach.  See **_Oppong v. First Union Mortgage Corporation_**  407 F.Supp.2d 658, 662 (E.D. Penn. 2005).

30. After discovery, the  Oppong Court found that Wells Fargo originated 410, 205 mortgage loans and acquired 89 delinquent mortgage loan that constitute debt collection activity and that must be assessed for their "regularity."  **_Id_** at 666.

31. Congress must have intended "principal purpose" prong of 15 U.S.C. § 1692 a(6) to differ from "regularly" prong, so that person may regularly render debt collection services, even if these services are not principal purpose of his business; if volume of person's debt collection services is great enough, it is irrelevant that these services only amount to small fraction of his total business activity, as person still renders them regularly. ***Garrett v. Derbes*** (5th Cir. La) 110 F.3d 317.

32. Under ***Oppong v. First Union Mortgage Corporation*** 407 F.Supp.2d 658, 662 (E.D. Penn. 2005), if Park National regularly engages in collecting debt due to itself, it is a debt collector within the meaning of FDCPA. Wells Fargo is a bank and it is a debt collector under ***Oppong***.

## C.   Plaintiff did Allege Facts Placing the Debt within Scope of the Act

33.  Hu's First Amended Complaint, paragraph 63 states that: " Hu raised the issue that Park National Bank did not have any evidence proving that those Post Money Orders were counterfeit."

34. Although Hu did not state in detail, Park was on notice of the litigation of 08 cv 844. The debt that Park was trying to collect came from the alleged counterfeit Postal Money Orders.

35. Payment obligation that arises from dishonored check constitutes 'debt' as defined in FDCPA. ***Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C***. (1997, CA 7 Wis) 111 F.3d 1322.  see also ***Snow v. jesse L. Riddle, P.C*** 143 F.3d 1350, 1353 (10th Cir. 1998); ***Brown v. Budget Rent-a-Car Sys***., 119 F.3d 922, 924-25 (11th Cir. 1997).

36. Besides,  by accepting Hu's Postal Money Order, Park is acting as Hu's agent in collecting the money from U.S. Postal Office.  Because Park under Banking

regulation is obligated to extend credit the next business day, before it can collect from U.S. Postal office,  Park is essentially an creditor creating a temporarily debt between Hu and Park until the Postal money order is cleared.   This certainly fits the definition of debt under FDCPA: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which money, property, insurance, or services which are the subject of the transaction."

37. Park insisted that Hu owed it money and debt.   Hu insisted that he did not, because Park failed to prove counterfeit, and also there is UCC finality rule, after the Postal Money Order is cleared by the U.S. Postal Office, it is final.  U.S. Postal Office had an opportunity to examine the Money Order when it clear the instrument.  Park assured Hu several times that the Money Order was cleared.   But in any event,  for the purpose of this litigation,  dishonored check is debt within the meaning of FDCPA.

38. Park is certainly on notice regarding Hu's allegation because of  litigation involving 08 cv 0844.  It is worth noting that the same counsel is representing Park in both cases.

39. Hu's bank account in Park is a personal bank account.  Hu wrote several check to cover his personal expenses.  After the reversal of $5,000 credit on Hu's account, Hu's account had a negative balance of about $3,300 created by his numerous transactions that are primarily for personal and house hold purposes.   If Park's allegation were to be true, that the postal money were counterfeit,  then Park essentially extended credit to Hu financing those personal transactions.

40. Offer or extension of credit is not required for payment obligation to constitute "debt" under FDCPA.  ***Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C***. (1997, CA 7 Wis)  111 F.3d 1322.

41. To the extent that Hu's Complaint is not clear, Hu can amend his complaint.  Park is certainly free to file Motion for definite statement under Rule 12 (e).

## D. Res Judicata is Not Applicable in our Case

42. For res judicata to apply, the following three elements must be present  1) a final judgment on the merits in an earlier action; 2) an identity of the  cause of action in both the earlier and later suit; and 3) an identity of parties or privies in the two suits. _**Sanders v. Venture Stores, Inc**_., 899 F.Supp. 387, 388 (N.D. Ill.1995).

43. The first element and third element of res judicata requirement are met.   The second element is not met.

44. Plaintiff agree that identity of causes of action is satisfied when "a single core of operative facts form the basis of both lawsuits." _**Id**_.

45. Plaintiff disagree that the second requirement is met.

46. The core operative facts forming the basis of Hu's first federal action is the seizure of Hu's account in Park National Bank, March 2005, when Postal Office's employee visited Park National Bank.  Hu claimed Fourteenth Amendment violation and right of privacy violation.  (see attached Hu's Complaint, which was the operative complaint.)

47. It is worth noting, that after Hu's federal complaint filed on February 13, 2007, defendant Park stay its collection action in state court.  It resumed its collection action after counsel Knopic withdrew his representation of Hu in his first federal action.

48. The core operative facts of collection efforts happened on trial of March 12, 2008 and its prior state proceeding, majority of which happened after Hu filed his section 1983 complaint on February 13, 2007.

49. Plaintiff Hu filed action against Park National Bank on February 13, 2007. The

complaint solely focused upon the "debt" being created because of the seizure and taking by Park National Bank.

50. Plaintiff's current complaint solely focuses upon the second single core of operative facts, which is the collection activities by Park and it's collection attorneys.   Under federal rules, Hu's separate claim could be joined with his prior complaint, and Hu did make a Rule 15 (a) motion to amend his complaint.   But Park objected to the amendment of the Complaint and the Court denied it. Hu did not have fair opportunity of litigating his separate complaint.  Hu's Rule 15 motion was denied without going into the merits.  Besides,  Hu's Amended Complaint still focused upon the seizure and taking of Hu's bank account.

51. Park did not have to pursue its collection.  Or it can choose to collect later.  Likewise, Hu did not have to bring his first Section 1983 action against Park. Assuming that after the statute of limitation has run, Park decided to collect the debt,  then, Hu can still bring his FDCPA action, although he would be time barred to claim unreasonable search and seizure, violation of privacy right and so on.  This illustrates that Hu's current action has a different core of operative fact, it is the collection of the debt, not the creation of the debt.

## E. Park is State Actor when it Invoked State Judicial Proceeding

52. In ***In re Adoption of K.L.P.***, 763 N.E. 2d 741, 198 Ill.2d 448 (Ill., 2002),  the Supreme Court of Illinois found equal protection violation when appointment of counsel for indigent defendant is provided in Juvenile Court Act 705 ILCS 405/1-5 while Adoption Act 750 ILCS 50/1 does not have similar provision with same consequence of terminating parental right, which is a fundamental right.  Relying upon ***Tulsa Professional Collection Services, Inc. v. Pope***  485 U.S. 478, 486-87 (1988), the

Supreme Court of Illinois concluded that invoking a judicial adoption proceeding is state action. ***Id***

53. Plaintiff would not repeat what is in his Opposition to Allen Meyer's Motion to dismiss, which discussed the issue of state action in detail.

54. It is sufficient to point out that the Supreme Court of Illinois twice relied upon ***Tulsa*** in holding that invoking a judicial proceeding is state action. see ***In re Application of County Collector***, 838 N.E.2d 907, 217 Ill.2d 1 (IL. 2005) (invoking judicial proceeding for tax deed is state action.)

55. In ***Lugar v. Edmondson Oil Company, Inc.***, 457 U.S. 922, 932 (1982), the Supreme Court of U.S. explicitly states that: " Necessary to that conclusion is the holding that private use of the challenged state procedures with the help of state officials constitutions state action for purposes of the Fourteenth Amendment."

56. It is important to point out, that conspiracy is not required. Only "overt, significant assistance of state officials", ***Tulsa*** at 486, ***Edmonson v. Leesville Concrete Company, Inc***., 500 U.S. 614, 622 (1991). ***Sniadach v. Family Finance Corp***., 395 U.S. 337 (1969). If there is "joint action", there is state action. ***Lugar*** at 939.

57. Invocation of state judicial proceeding involves "overt, significant assistance of state officials" and therefore there is state action.

58. In the latest U.S. Supreme Court case, ***Jones v. Flowers*** No. 04-1477 (S.Ct. 4/26/2006)(S.Ct. 2006), the High Court reversed a decision of Arkansas Supreme Court on the ground of due process of Fourteenth Amendment. (insufficient notice to home owner on a tax sale). The underlying premise is that invocation of state judicial proceeding for tax deed is state action.

59. Park invoked state judicial proceeding in trying to collect its debt, it is state actor.

### F.  Hu do Not Need to Respond to Park's Rooker-Feldman Argument

60. Park did not develop its argument with proper support of case authorities.  Park did not

point out specific fact supporting its arguments.  Park waived its argument. See ***Estate***

***of Moreland v. Dieter,*** 395 F.3d 747, 759 (7th Cir. 2005).   ***Brandt v. Board of Educ.***

***Of City of Chicago***, 420 F.Supp.2d 921, n 5,  (N.D. Ill., 2006), ***Schmude v. Sheahan***,

312 F.Supp.2d 1047, 1081  (N.D. Ill. 2004) (The failure to develop an argument

results in that argument being waived.),  ***United States v. Jones***, 224 F.3d 621 (7th Cir.

2000)(stating  that arguments that are not adequately developed or supported are

waived).

61. Because Park waived it argument, Hu would only briefly respond.  It is sufficient to

point, that res judicata and rooker-Feldman arguments are related.   Since Hu's claim

is based upon a different core of operative fact, Park's argument is without merit.

## Conclusion:

62.  Park's Motion to Dismiss is without merit and therefore ought to be denied by this

Court.


Respectfully Submitted,      Yaodi Hu          219 W. Cermak Chicago IL 60616


Signature:    Yaodi Hu

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| YAODI HU | ) | |
| Plaintiff, | ) | |
| | ) | Request for Jury Trial |
| v. | ) | |
| | ) | |
| PARK NATIONAL BANK | ) | |
| c/o FIRST NATIONAL BANK OF | ) | |
| OAK PARK, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DONALD R. NICHOLS, Postmaster, | ) | |
| United States Postal Service, in his | ) | |
| personal capacity | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**AMENDED COMPLAINT**

Plaintiff, by and through his attorney, John Knopic, state as follows in support of

his claim for damages against Defendants Park National Bank c/o First National Bank of

Oak Park, and Defendant Donald R. Nichols.

1.     The action arises under the Right to Financial Privacy Act, 12 U.S.C. §3402 as

appears more fully below, and a civil rights action pursuant to 42 U.S.C. § 1983 for a

violation of the Due Process Clause of the 14th Amendment to the United States

Constitution.

**JURISDICTION**

2.     The Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §1331

in this action arises under the Constitution, laws or treaties of the United States, and 28

U.S.C. §§ 1343(a)(3) and 1343(a)(4).

## VENUE

3.      Venue is proper is this District pursuant to 28 U.S.C. §1391(b)(2), in that a substantial part of the events giving rise to the claim arose in this district.

## PARTIES

4.      Plaintiff Yaodi Hu, is a resident of Chicago, Illinois.

5.      Defendant Park National Bank, is a subsidiary of FBOP Corporation, with a branch located at 400 Madison Street, Maywood, Illinois.

6.      Defendant Donald R. Nichols is citizen of the state of Illinois, and the former Postmaster at the United States Post Office in the Village of Maywood.  Defendant Nichols is being sued in his personal capacity.

## STATEMENT OF FACTS

7.      On February 25, 2005, Plaintiff Yaodi Hu deposited five Postal Money Orders (hereinafter the "Money Orders"), each in the combined amount of $5,000.00 into his account with Defendant Park National Bank (hereinafter the "Account").  Plaintiff Hu received the Money-Orders via overnight-delivery from an individual to purchase a piano (hereinafter "Purchaser").

8.      Plaintiff Hu raised concern about the authenticity of the Money Orders to the Defendant Park National Bank's teller and the branch manager at the time of deposit. Plaintiff Hu decided to wait until the Money Orders were cleared before he drew on his Account.  Plaintiff Hu visited Defendant Park National Bank on several occasions inquiring about the status of the deposited Money Orders.  Each time Defendant Park National Bank assured Plaintiff Hu that the Money Orders were cleared.

9.        Defendant Park National Bank assured Plaintiff Hu that the money was available the next day after the deposit of the Money Orders.  On March 15, 2005, Plaintiff Hu withdrew $2,600.00 from his Account.  The money was wired to a moving company designated by the Purchaser to pick up the piano.

10.       At or around the end of March, 2005, Plaintiff Hu received ten Postal Money Orders in the combined amount of $10,000.00 from the Purchaser.  Purchaser asked for money to be wired immediately.

11.       Plaintiff Hu deposited three of the Postal Money Orders into his Account. Plaintiff Hu visited the United States Postal Service branch in the Village of Maywood. The clerk stated the Money Orders could be cashed at that location, however the Post Office did not have the funds at the time.  Plaintiff Hu insisted the Maywood Post Master, Defendant Donald R. Nichols examine the remaining seven Postal Money Orders so Plaintiff Hu could deposit at another location.  Defendant Nichols examined the seven Postal Money Orders and determined each to be counterfeits.

12.       Plaintiff Hu explained to Defendant Nichols that the Purchaser sent him the first set of Money Orders, Defendant Park National Bank determined these items were authentic and the funds were cleared and available.  Defendant Nichols insisted the first set of Money Orders were also counterfeit, even though he had not examined those items.

13.       The following day, Defendant Park National Bank called Plaintiff Hu to inform him that Defendant Nichols visited Defendant Park National Bank, and reversed the credit for the three Postal Money Orders deposited the previous day.  Defendant Park National Bank informed Plaintiff Hu that his Account was frozen because Defendant

Nichols wanted the credit of the first set of Money Orders to be reversed.  At all time

Defendant Nichols was acting under color of authority.

14.        On April 8, 2005 Defendant Park National Bank reversed the $5,000 deposit

in the Account resulting in a negative balance of $3,380.00.  Before this reversal of

credit, Plaintiff Hu had a balance of $1,620.00.

15.        Plaintiff Hu has on several occasions asked to view the allegedly counterfeit

Money Orders, and Defendant Park National Bank refuses his requests.

16.        Defendant Park National Bank filed a claim against Plaintiff Hu in The Circuit

Court of Cook County, Illinois, Municipal Department, First District on July 29, 2005 for

the amount of the $3,730.00 plus costs.

17.        In March, 2006, Plaintiff Hu together with his attorney visited Defendant Park

National Bank and asked for a copy of Plaintiff Hu's bank account records.  Bank

account contains no record of Plaintiff Hu's deposit of three Postal Money Orders on or

about March 15, 2005.

18.        In March 2006, Plaintiff Hu together with his attorney visited the United

States Postal Service branch in the Village of Maywood, Illinois.  Defendant Nichols, the

Post Master at that branch in March, 2005, relocated to another position with the United

States Postal Service.  Plaintiff Hu, through his attorney, tried to contact Defendant

Nichols and he has not replied.

19.        Plaintiff Hu has submitted discovery requests for the original five U.S. Postal

Money Orders deposited by Plaintiff Hu, and for bank records showing if these five

Money Orders were cleared by Defendant Park National Bank.  Attorneys for Defendant

Park National Bank did not produce such documents and said Plaintiff needs to subpoena

Chase Bank, a third party, for discovery of these items.

COUNT I
RIGHT TO FINANCIAL PRIVACY ACT, 12 U.S.C. §3402

20.      Plaintiff Hu repeat and reallege the facts in Paragraphs 1-19, above, as if fully

set forth herein.

21.      That on April 8, 2005 there existed a statute entitled the Right to Financial

Privacy Act, 12 U.S.C. § 3402 which provided:

> Except as provided by section 3403 (c) or (d), 3413, or 3414 of this title, no
> Government authority may have access to obtain copies of, or the information
> contained in the financial records of any customer from a financial institution
> unless the financial records are reasonably described and –
>   a.   such customer has authorized such disclosure in accordance with section
>        3404 of this title
>   b.   such financial records are disclosed in response to an administrative
>        subpoena or summons which meets the requirements of section 3405 of
>        this title;
>   c.   such financial records are disclosed in response to a search warrant which
>        meets the requirements of section 3406 of this title;
>   d.   such financial records are disclosed in response to a judicial subpoena
>        which meets the requirements of section 3407 of this title; or
>   e.   such financial records are disclosed in response to a formal written request
>        which meets the requirements of section 3408 of this title.

22.      That Defendant Park National Bank released Plaintiff Hu's financial records

to Defendant Nichols without following the notice provisions of the Right to Financial

Privacy Act, 12 U.S.C. §3401 et seq.

WHEREFORE, Plaintiff Hu respectfully requests the following damages under the Right

to Financial Privacy Act, 12 U.S.C. §3417; (1) actual damages sustained by Plaintiff Hu

as a result of the disclosure in the amount of $1,620.00, , plus damages for emotional

distress; (2) such punitive damages in the amount of $1,000,000.00; and (3) the costs of

the action together with reasonable attorney's fees as determined by the Court.

COUNT II
VIOLATION OF 14TH AMENDMENT DUE PROCESS CLAUSE
AND 42 U.S.C. §1983

23.     Plaintiff Hu repeat and reallege the facts in Paragraphs 1-19, above, as if fully

set forth herein.

24.     Defendant Nichols and Defendant Park National Bank have illegally seized

Plaintiff Hu's bank Account by freezing the Account and reversing the credit without

examining the first set of Money Orders.

25.     All actions by the Defendant Nichols and Defendant Park National Bank set

forth above were done under color of law.

26.     Defendant Nichols and Defendant Park National Bank showed callous

indifference to Plaintiff Hu's federally protected rights.

WHEREFORE, Plaintiff Hu respectfully requests the following damages under 42 U.S.C.

§ 1983; (1) compensatory damages in the amount of $1,620.00, plus damages for

emotional distress; (2) punitive damages in the amount of $1,000,000.00; (3) the cost of

the action plus reasonable attorney's fees.


Respectfully submitted,


_____
JOHN J. KNOPIC II
4104 South Archer Avenue
Chicago, Illinois 60632
Attorney No. 6286612
(773) 843-4300
Attorney for Plaintiff